HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPIC GAME FARM, INC.,<br>ROBERT BEEBE, JAMES BEEBE, and<br>KENNETH BEEBE,<br><br>Defendants. | CASE NO. C18-6025RBL<br><br>ORDER DENYING MOTION TO<br>DISMISS PUBLIC NUISANCE<br>CLAIM |

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Public Nuisance Claim [Dkt. #22]. The Court has reviewed the materials filed for an against the motion. Oral argument is unnecessary. For the reasons below, the motion is **DENIED**.

**I. FACTUAL BACKGROUND**

This case alleges the mistreatment and unsafe captivity of numerous animals kept at a roadside zoo in Sequim, Washington known to the public as the Olympic Game Farm (OGF). Theories of liability include: 1) violation of the Endangered Species Act (ESA), 2) violation of the Washington State Animal Cruelty Laws (RCW 16.52.205), and 3) maintaining a public nuisance (RCW 7.48.130). Defendants choose to isolate the Public Nuisance claim in an attempt to prune this "Bonzai tree" with tweezers and fingernail clippers. The first claim is the ESA

1 action which protects federally listed and specially protected species from killing, wounding, harming, injuring and harassing animals like: endangered gray wolves, endangered lions, endangered tigers, threatened brown bears and threatened Canada Lynx. The full panoply of remedies sought in this case are available under the first two theories. Nevertheless, the Court will analyze the attack on the third theory: public nuisance.

## II. STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011). "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist *Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Dismissal is improper except in extraordinary cases. *Corsican Prods. v. Pitchess*, 338 F.2d 441, 442 (9th Cir. 1964).

When considering a Rule 12 motion, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim which is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court "accepts the well-pleaded factual allegations of the complaint as true and construe them in the light most favorable to plaintiffs." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). The plaintiff must provide more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action," but need not provide detailed factual allegations. *Twombly*, 550 U.S. at 555. A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Id*. at 569, n. 13. Plaintiff's allegations need only amount to more than "sheer possibility." *Iqbal*, 556 U.S. at 678.

"[A]ll claims at the pleading stage . . . require[] development." *OSU Student Alliance*, 69 F.3d at 1077. For this reason, "[t]he plaintiff's failure to prove the case on the pleadings [would] not warrant dismissal." *Id.* at 1078. As the Ninth Circuit has explained, "All that matters at this stage is that the allegations nudge this inference 'across the line from conceivable to plausible.'" *Id.* (quoting *Iqbal*, 556 U.S. at 1951). When the allegations in the complaint are plausible, "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* Applied recently, the Supreme Court held that where plaintiffs state "simply, concisely, and directly events that, they alleged, entitled them to damages from the city" plaintiffs had "informed the city of the factual basis for their complaint" and were "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson v. City of Shelby, Miss.*, ⸺ U.S. ⸺, 135 S. Ct. 346, 347, (2014) (*per curiam*) (reversing dismissal of suit and citing Fed. R. Civ. P. 8(a)(2) and (3), (d)(1), (e)).

As explained below, accepting all facts alleged by Plaintiff as true and provable, Animal Legal Defense Fund (ALDF) has stated a claim for public nuisance on the face of its Complaint.

### III. DISCUSSION

**A. Public Nuisance in Washington.**

Washington has codified the requirements for a nuisance action. Washington defines nuisance as "unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others . . . or in any way

renders other persons insecure in life, or in the use of property." Wash. Rev. Code § 7.48.120. Washington's nuisance statute also distinguishes public nuisances from private nuisances. A public nuisance is defined as "one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." Wash. Rev. Code §7.48.130; *cf.* Wash. Rev. Code § 7.48.150 (defining private nuisance as any nuisance that is not included in the definition of a public nuisance).

Washington's nuisance statute enumerates nine specific prohibited public nuisances: (1) depositing an animal carcass or entrails in a public area; (2) depositing an animal carcass in a watercourse, stream, pond, or public highway; (3) obstructing a river or harbor; (4) obstructing a public highway or municipal transit vehicle; (5) manufacturing gun powder; (6) establishing powder magazines near towns or dwellings; (7) creating obnoxious exhalations or smells dangerous to public health; (8) illegally selling intoxicating liquors; and (9) failing to cover or fence off excavated wells, septic tanks, or cesspools. *See* Wash. Rev. Code § 7.48.140; *see also* 6A *Washington Practice: Washington Pattern Jury Instructions – Civil,* WPI 380.02, Westlaw (6th ed., database updated Dec. 2017). Although Washington courts have allowed other actions or inactions to form the basis of a public nuisance claim, this enumerated list is instructive because it confirms the legislature was conforming public nuisance to accepted and known public threats. *See, e.g., Kitsap County v. Kitsap Rifle & Revolver Club*, 337 P.3d 328, 343 (Wash Ct. App. 2014) (operation of a shooting range without adequate facilities to confine bullets to the property constituted a public nuisance). Furthermore, the Washington legislature has expressed disfavor for nuisance claims that target farm operations, and expressed its intent that agricultural activities, including livestock management, conducted on farmland "be

protected from nuisance lawsuits," and that such practices are presumed not to be a nuisance. Wash Rev. Code. §§ 7.48.300, .305. This zoo is no "farm."

Washington also limits the individuals who may file a public nuisance action. Generally, a nuisance claim can be brought by "any person whose property is, or whose patrons or employees are, injuriously affected or whose personal enjoyment is lessened by the nuisance." Wash. Rev. Code § 7.48.020. But in the case of a *public nuisance*, a person may only maintain a civil action if the nuisance is also "specially injurious to himself or herself but not otherwise." Wash. Rev. Code § 7.48.210. The Washington Supreme Court "treat[s] 'specially injurious' harms needed for public nuisance claims the same as 'specific and perceptible' 'injuries in fact' needed for noneconomic claims." *Chelan Basin Conservancy v. GBI Holding Co.*, 413 P.3d 549, 561 (Wash. 2018). Moreover, for a private party to bring a public nuisance claim, the plaintiff must show special injury that is distinct from what has been suffered by the general public. *See*, *e.g., Sound Mind & Body, Inc. v. City of Seattle*, 122 Wash. App. 1074 (table), 2004 WL 1814330, at *2 (2004) (unpublished opinion) (holding that plaintiff's alleged injuries were not different from those suffered by the general public). If a private party cannot show specific injury over and above the injury suffered by the general public, the nuisance can only be abated by public authorities. *Lampa v. Graham*, 36 P.2d 543, 544 (Wash. 1934).

OGF contends that ALDF is not entitled to maintain a nuisance action because it has not alleged facts showing that it has suffered a "special injury" as part of its community or neighborhood. RCW 7.48.210 ("A private person may maintain a civil action for a public nuisance, if it is specially injurious to himself or herself but not otherwise."). Reviewing this provision last year, the Washington Supreme Court explained that the special injury requirement "is not a particularly high bar," and "[i]njury to the aesthetic appeal and environment of an area is sufficient to support standing if the plaintiff establishes that he or she uses that area for

recreational purposes." *Chelan Basin Conservancy v. GBI Holding Co.*, 190 Wash.2d 249, 271, 413 P.3d 549, 560–61 (Wash. 2018) (comparing requirement to standing and citing Article III standing cases).

In *Chelan*, a lake conservation group brought suit against the private owner of a landfill in a lake, who many years after filling part of the lake, had been granted permission by the city of Chelan to subdivide the filled land. The Conservancy sought removal of the landfill pursuant to the public trust doctrine. The State Supreme Court granted review noting that one of the three issues to be decided on appeal was "whether the Conservancy has standing" to bring a public nuisance action based on an alleged breach of the state's public trust doctrine. 190 Wash.2d at 259. The court noted that there are many types of public nuisance actions, and that a plaintiff must be "specially injured" in order to have standing to raise a public trust claim, "but that requirement is not a particularly high bar." *Id*. at 272. In this regard, the court noted that RCW 7.48.210 "does not indicate the injury needed to satisfy that requirement is more demanding or exacting than the injury needed for noneconomic standing generally," thus, "in the absence of a statutory definition, we will treat 'specially injurious' harms needed for public nuisance claims the same as 'specific and perceptible' 'injuries in fact' needed for noneconomic claims." *Id*.

The court noted that "injury to the aesthetic appeal and environment of an area is sufficient to support standing if the plaintiff establishes that he or she uses that area for recreational purposes." *Id*. at 273 (*citing Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)). Thus, the court held "The Conservancy satisfies that showing. Its members claim, with detail, that they are recreational users of Lake Chelan and that the Three Fingers fill obstructs their desire and right to use navigable waters over the property during the lake's high-water season." *Id*. "We hold the harms alleged by the Conservancy's members are sufficiently distinct from the

general public to satisfy the standing requirements of RCW 7.48.210. Moreover, that the Conservancy's members have never been able to use the lake waters over GBI's property despite their desire to do so shows their injury is real, not just speculative." *Id*. In reaching its determination, the court reviewed and rejected *Lampa v. Graham*, 179 Wash. 184 (1934), which is cited by OGF in support of its motion. *Compare id. with* Dkt. # 22 at 7.

*Chelan* strongly supports ALDF's nuisance claim. Like the plaintiff in that case, ALDF is a public interest organization whose members have been "specially injured" by Defendants' nuisance because, as animal lovers and advocates, they visited the OGF for recreational purposes based on the mistaken belief that OGF was caring for exotic animals, when in fact OGF is mistreating and abusing those animals, which left ALDF's members emotionally upset and unable to return to OGF for recreational enjoyment. As in *Chelan*, the harms alleged by ALDF's members are sufficiently distinct from the general public to satisfy the standing requirements of RCW 7.48.210. ALDF's members would return to OGF for their recreational enjoyment if the housing conditions improved, or they would visit the animals if they were moved to a law-abiding sanctuary.

The violation of federal and state laws also supply a predicate for a public nuisance action. *Miotke v. City of Spokane*, 101 Wash. 2d 307, 329, 678 P.2d 803, 815 (1984) ("In short, it is clear from the federal and state statutory schemes . . . that the discharge of pollutants into state waters is prohibited unless authorized by a permit."); *id*. at 330 (finding that even though the state law provision at issue (RCW 90.48) did not provide a private right of action, a discharge violating the statute "constitutes a nuisance . . . and entitled plaintiffs to recover damages"); *see also Tiegs v. Boise Cascade Corp*., 83 Wash.App. 411, 416, 922 P.2d 115, 118–19 (Wash. Ct. App. 1996) (affirming jury instruction stating that "A violation of this statute constitutes a

nuisance," and commenting "*Miotke*'s recognition of an action for nuisance based upon a defendant's violation of a statute is supported by 8 Thompson on Real Property, Thomas Edition.").

ALDF has alleged that Defendants' failure to abide by the federal Endangered Species Act, as well as alleged violations of Washington State animal cruelty laws creates a public nuisance. Defendants *admit* one of these allegations, namely that they are not accredited but "possess or display Roosevelt Elk." This is an admitted violation of Washington law at WAC § 220-450-030(2) which makes it unlawful for a non-accredited facility to possess such a species. Thus, even aside from the allegations of violations of animal cruelty laws, this single admission supports ALDF's public nuisance claim on the pleadings. *Cf. Colo. Div. of Wildlife*, 843 P.2d 662 (possession of cervids in violation of state regulation had "potential to impact *both* the agricultural industry and wildlife resources of the state" and was a public nuisance to be abated).

The Complaint alleges that Defendants are also violating state laws by inhumanely confining not only federally endangered species, but other animals as well. Defendants are alleged to be violating Washington State animal cruelty laws which protect all animals from knowing or reckless infliction of unnecessary pain or suffering, or the failure to provide necessary shelter, rest, sanitation, space, or medical attention where the animal suffers unnecessary or unjustifiable pain as a result of the failure. RCW 16.52.207. Second, Defendants are alleged to be violating state animal cruelty laws by intentionally inflicting substantial pain and causing physical injury to the animals within its care, including, but not limited to, gray wolves, lions, tigers, brown bears, and Canada lynx. *See* RCW 16.52.205. Third, Defendants are alleged to be violating the Washington State Endangered Species Act, by possessing species the

ORDER DENYING MOTION TO DISMISS
PUBLIC NUISANCE CLAIM - 8

State has designated as endangered: the gray wolf, Canada lynx, and grizzly bear. *See* WAC 220-610-010. As in *Chelan* and *Miotke*, it is Defendants' violation of state laws that is the basis of ALDF's public nuisance claim.

Plaintiff has met the low bar of standing in a public nuisance context. Defendants' Motion to Dismiss is **DENIED**.

IT IS SO ORDERED.

Dated this 21st day of May, 2019.

_____
Ronald B. Leighton
United States District Judge