1

THE HONORABLE ROBERT S. LASNIK

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

ANIMAL LEGAL DEFENSE FUND,

No. 3:18-cv-06025-RSL

10

Plaintiff,

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

11

v.

12

OLYMPIC GAME FARM, INC., ROBERT BEEBE, JAMES BEEBE, and KENNETH BEEBE,

**NOTE ON MOTION CALENDAR: April 9, 2021**

13

14

15

Defendants.

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(3:18-cv-06025-RSL)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## TABLE OF CONTENTS

2
Page

3
TABLE OF AUTHORITIES ................................................................................................ iii

4
I. INTRODUCTION AND RELIEF REQUESTED ............................................................ 1

5
II. STATEMENT OF FACTS .............................................................................................. 3

6
   A. Factual Background ...................................................................................................... 3

      1.  *History of Olympic Game Farm* ........................................................................ 3

7
      2.  *Animals at Olympic Game Farm* ...................................................................... 4

8
      3.  *Care for Animals at Olympic Game Farm Under the Animal Welfare Act* ............... 4

   B. Procedural Background ................................................................................................. 6

9
III. STATEMENT OF ISSUES ............................................................................................ 7

10
IV. EVIDENCE RELIED UPON ......................................................................................... 7

11
V. ARGUMENT AND AUTHORITY ................................................................................. 7

   A. Standard for Summary Judgment ................................................................................ 7

12
   B. ALDF's Claim I for Violation of the ESA Fails as a Matter of Law .......................... 8

13
      1.  *The Endangered Species Act Protects Only Listed Species of Animals* ..................... 8

14
      2.  *Olympic Game Farm's Brown Bears Are Not Protected by the ESA Because They Are Not Subspecies* Ursus arctos horribilis *of the 48 Conterminous States of the United States* ................................................................ 10

15

16
      3.  *Olympic Game Farm's Wolf-Dog Hybrids Are Not Protected by the ESA Because Gray Wolves Are Not Listed as Threatened and Because They Are Not Pure Wolves from a Protected Area in the 48 Conterminous States of the United States* ........................................................... 11

17

18
      4.  *Olympic Game Farm's Canada Lynx Is Not Protected by the ESA Because It Was Born in Captivity and Lawfully Acquired* ......................................... 13

19
      5.  *Defendants Have Not Committed a "Take" of Any Species Protected by the ESA Because Olympic Game Farm Meets or Exceeds the Standards in the AWA* ....................................................................................... 14

20

21
         a.  Brown Bears ................................................................................................ 14

         b.  Wolf-Dog Hybrids ..................................................................................... 15

22
         c.  Canada Lynx .............................................................................................. 16

23
         d.  Lions ........................................................................................................... 16

24
         e.  Tigers ......................................................................................................... 17

   C. ALDF's Claim II for Violation of the ESA Fails Because Defendants Do Not Possess Any Species Taken in Violation of the ESA ................................................ 18

25

26
   D. ALDF's Claim III Fails Because Olympic Game Farm Is Not a Public Nuisance .......... 19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - i
(3:18-cv-06025-RSL)

1

      1. *ALDF Cannot Establish Impact to the Entire Community or Neighborhood*............ 19

      2. *ALDF Cannot Establish a Special Injury* ................................................................. 21

      3. *Olympic Game Farm Complies with Applicable Laws* ............................................. 22

VI. CONCLUSION ............................................................................................................................. 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - ii
(3:18-cv-06025-RSL)

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Anderson v. Liberty Lobby, Inc.*,
5       477 U.S. 242 (1986)...................................................................................7

6

*Animal Legal Def. Fund v. Mendes*,
7       72 Cal. Rptr. 3d 553 (Ct. App. 2008) .....................................................22

8

*Crawford v. Cent. Steam Laundry*,
       78 Wash. 355, 139 P. 56 (1914)........................................................20, 21
9

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
10      566 F.3d 794 (9th Cir. 2009) ...................................................................12

11

*Hill v. Coggins*,
       423 F. Supp. 3d 209 (W.D.N.C. 2019) ....................................................14
12

*Kuehl v. Sellner*,
13      161 F. Supp. 3d 678 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018) ........................13

14

*Lampa v. Graham*,
15      179 Wash. 184, 36 P.2d 543 (1934)........................................................21

16

*Miotke v. City of Spokane*,
       101 Wash. 2d 307, 678 P.2d 803 (1984), *abrogated on other grounds by Blue*
17      *Sky Advocates v. State*, 107 Wash. 2d 112, 727 P.2d 644 (1986)............20

18

*Pa. Soc'y for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*,
19      237 A.2d 342 (Pa. 1968) .........................................................................22

20

*Pac. Nw. Venison Producers v. Smitch*,
       20 F.3d 1008 (9th Cir. 1994) ...................................................................23
21

*People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*,
22      189 F. Supp. 3d 1327 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1142 (11th Cir. 2018),
       *adhered to on denial of reh'g*, 905 F.3d 1307 (11th Cir. 2018) .........10, 14
23

*Reynaga v. Roseburg Forest Prods.*,
24      847 F.3d 678 (9th Cir. 2017) .....................................................................7

25

*Sound Mind & Body, Inc. v. City of Seattle*,
26      122 Wash. App. 1074, 2004 WL 1814330 (2004) (unpublished) ...........21

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - iii
(3:18-cv-06025-RSL)

1    *Tenn. Valley Auth. v. Hill,*
2       437 U.S. 153 (1978) ..................................................................................8

3    *United States v. Kapp,*
4       419 F.3d 666 (7th Cir. 2005) .............................................................12, 13

5    *State ex rel. Warner v. Hayes Inv. Corp.*,
        13 Wash. 2d 306, 125 P.2d 262 (1942), *abrogated on other grounds by Yim v.*
6       *City of Seattle*, 194 Wash. 2d 682, 451 P.3d 694 (2019) ........................20

7    *Wolfe v. State, Dep't of Transp.*,
        4 Wash. App. 2d 1023, 2018 WL 3026366 (2018) (unpublished) ..........20

8    *Wood v. Mason County*,
9       174 Wash. App. 1018, 2013 WL 1164437 (2013) (unpublished) ...........20

10   **Statutes**

11   7 U.S.C. § 2131, *et seq* .................................................................... passim

12   16 U.S.C. § 1531, *et seq* ..............................................................2, 18

13   16 U.S.C. § 1532(19) ....................................................................9

14   16 U.S.C. § 1533 ............................................................................8

15   16 U.S.C. § 1538(a)(1) ...............................................................9, 19

16   16 U.S.C. § 1538(a)(1)(B) ...........................................................9

17   Wash. Rev. Code § 7.48.020 ........................................................21

18   Wash. Rev. Code § 7.48.120 ...................................................19, 22

19
     Wash. Rev. Code § 7.48.130 ........................................................20

20   Wash. Rev. Code § 7.48.210 ........................................................21

21   Wash. Rev. Code § 16.52 ..............................................................2

22
     Wash. Rev. Code § 77.15 ..........................................................2, 23

23   Wash. Rev. Code § 77.15.120 ......................................................23

24
25   **Rules**

26   Fed. R. Civ. P. 30(b)(6) ................................................................2

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - iv
(3:18-cv-06025-RSL)

1  Fed. R. Civ. P. 56(a) ...................................................................................................7

2  **Regulations**

3  9 C.F.R. § 1.1 ...........................................................................................................13

4  50 C.F.R. § 17.3 ...............................................................................................9, 10, 14

5  50 C.F.R. § 17.11(h) .............................................................................................8, 12

6  50 C.F.R. § 17.40(b)(2) ..........................................................................................8, 10

7  50 C.F.R. § 17.40(k) ..............................................................................................8, 13

8  50 C.F.R. § 17.40(k)(4)(i) ......................................................................................8, 13

9  63 Fed. Reg. 48634 (Sept. 11, 1998) .....................................................................9, 19

10 85 Fed. Reg. 69778 (Nov. 3, 2020) .......................................................................8, 12

11 Wash. Admin. Code 220-450-030 ..............................................................................23

12 Wash. Admin. Code 220-610-110 ..............................................................................23

13 **Other Authorities**

14 Danny Waltz, *The "Embarrassing" Endangered Species Act: Beyond Collective*
   *Rights for Species*, 45 Colum. J. Envtl. L. 1 (2020) ......................................2, 8, 14

15 Restatement (Second) of Torts § 821B (1979) ...........................................................20

16 USDA Animal Care "Blue Book" ...........................................................................4, 5

17 Wash. S. Res. 8612 (adopted Jan. 20, 2011)........................................................1, 3, 4, 21

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - v
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

105788022.9 0069042-00001

1

## I. INTRODUCTION AND RELIEF REQUESTED

2   Olympic Game Farm, Inc. ("**Olympic Game Farm**") has been part of the Sequim

3   community for more than 50 years.[1]  Visitors can drive through its 84 acres and experience animals

4   up close.  It is one of the top attractions on the Olympic Peninsula, with more than 125,000 visitors

5   annually.  It receives high praise—with 4.6 out of 5 stars with almost 3,500 reviews on Google—

6   and was named "Business of the Month" by the Sequim Chamber of Commerce.[2]  Olympic Game

7   Farm has been commended by the Washington State Senate, and it enjoys the support of neighbors

8   and the local community.[3]  Even Washington "members" of Animal Legal Defense Fund

9   ("**ALDF**") believe it "is a great home for animals" and are "glad" that it is part of their community.[4]

10   Olympic Game Farm is licensed by the United States Department of Agriculture ("**USDA**")

11   to exhibit animals and is regularly inspected for compliance with the Animal Welfare Act, 7 U.S.C.

12   § 2131, *et seq*.  Dr. Diane Forbes, the primary USDA inspector for Olympic Game Farm over the

13   last decade, testified that not only has she never seen any evidence of animal cruelty or abuse at

14   Olympic Game Farm, but Olympic Game Farm goes above and beyond the Animal Welfare Act

15   in caring for its animals.[5]  To be sure, the USDA's recent inspections had zero non-compliances.[6]

16   ALDF is a multi-million-dollar, California-based animal-rights activist group.  It has no

17   offices in Washington and is not registered with the Secretary of State.[7]  ALDF admits the Animal

18   Welfare Act "provides minimum standards of care," but it wants courts like this one to "reform"

19   ────────────────

20   [1] Declaration of Robert Beebe ("**Beebe Decl.**"), ¶¶ 1-5.

21   [2] *See* Declaration of Jason Morgan ("**Morgan Decl.**"), ¶ 2 & Ex. A; *see also id.* at ¶¶ 3-4 & Exs. B, C; Beebe Decl., ¶ 6 & Ex. B.

22   [3] Beebe Decl., ¶ 3 & Ex. A (Wash. S. Res. 8612 (adopted Jan. 20, 2011)); *see also* Declaration of Isabelle Dunlop ("**Dunlop Decl.**"); Declaration of Richard Humphreys ("**Humphreys Decl.**"); Declaration of Brain Garrett ("**Garrett Decl.**"); Declaration of James McEntire ("**McEntire Decl.**").

23   [4] *See* Declaration of Theresa Teas ("**Teas Decl.**"), ¶ 8 & Ex. B.

24   [5] *See* Morgan Decl., ¶ 5 & Ex. D (Deposition of Diane Forbes ("**Forbes Dep.**") at 198:3-20, 215:8-11, 221:2-11, 220:24-221:1, 222:18-21).

25   [6] *See* Beebe Decl., ¶¶ 7-10 & Exs. C-E.

26   [7] Morgan Decl., ¶ 6 & Ex. E (Deposition of Mark Walden ("**Walden Dep.**") at 65:12-16, 66:14-17, 68:4-9).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
(3:18-cv-06025-RSL)

105778022.9 0069042-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

the Endangered Species Act, 16 U.S.C. § 1531, *et seq*. ("**ESA**"), outside the legislative process to create a "new understanding of the ESA, as an animal law attuned to the subjective experiences of individual members of listed species."[8]   ALDF also seeks to contort state public nuisance laws to appoint itself as the enforcer of animal laws, even though states like Washington do not recognize private causes of action.[9]   ALDF currently has more than 60 active lawsuits across the country.[10]

Just days before Christmas 2018, ALDF filed a complaint against Olympic Game Farm, Robert Beebe, James Beebe, and Kenneth Beebe (collectively, "**Defendants**") that was big on incendiary accusations but short on facts.   ALDF's Rule 30(b)(6) representative testified that it had no evidence supporting dozens of its accusations and had not even contacted members of the local community before filing the Complaint.[11]   Nonetheless, ALDF launched its accusations out to more than two dozen media outlets, hoping to poison public sentiment.[12]   ALDF never mentioned to those outlets that the allegations underlying its Complaint had been recently investigated by the USDA and determined to be baseless.[13]

This lawsuit should never have been filed, and after two years of litigation, it is time to put this case to rest.   ALDF's claims under the ESA fail because only five animals at Olympic Game Farm are protected by the ESA and Olympic Game Farm complies with the ESA, which requires animal care consistent with the Animal Welfare Act.   ALDF's public nuisance claim fails because Olympic Game Farm has support from its neighbors and the Sequim community and because Olympic Game Farm complies with applicable laws.   For these reasons and those discussed below, the Court should enter summary judgment dismissing ALDF's claims as a matter of law.

---

[8] Danny Waltz, *The "Embarrassing" Endangered Species Act: Beyond Collective Rights for Species*, 45 Colum. J. Envtl. L. 1, 45, 52, 55 (2020) (internal quotation marks and citation omitted); Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 84:6-12).

[9] *See, e.g.,* Wash. Rev. Code §§ 16.52, 77.15.

[10] Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 69:14-21).

[11] *See id.* (Walden Dep. at 106:5-107:14).

[12] *See id.*, ¶ 7 & Ex. F (Resp. to Interrog. No. 7).

[13] *See id.*, ¶ 5 & Ex. D (Forbes Dep. at 206:5-13, 206:25-207:7, 207:10-16).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
(3:18-cv-06025-RSL)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

## II.  STATEMENT OF FACTS

**A.   Factual Background**

    *1.*   **History of Olympic Game Farm**

Olympic Game Farm was started by filmmaker and animal trainer Lloyd Beebe.[14]  Starting in the 1950s, Lloyd and his family made more than 100 films for Walt Disney, either onsite or featuring animals trained at Olympic Game Farm, including *The Incredible Journey*, *Charlie the Lonesome Cougar*, *Grizzly Adams*, and *Never Cry Wolf*.[15]  Some of Olympic Game Farm's treasured history is recounted by the Washington State Senate in a resolution commending Lloyd and his wife, Catherine, for their lifelong commitment to "their animals[] and the betterment of the Olympic Peninsula," for bringing "attention to conservation issues and the wildlife of the State of Washington," and for decades of assistance with "conservation and rehabilitation of wildlife."[16]

With the approval of the Board of Clallam County Commissioners, in 1972 Lloyd and Catherine began to allow the public into Walt Disney's Wild Animal Ranch, as it was then known.[17]  Since then, Olympic Game Farm has become one of the top attractions on the Olympic Peninsula, with more than 125,000 people visiting each year, and regularly receiving four-star and five-star reviews.[18]  With its commitment to the health and safety of its animals, Olympic Game Farm is praised by its neighbors, civic leaders, and the Sequim community.[19]  And as the Senate recognized, Olympic Game Farm "continues to contribute to the economy and incredible landscape of Clallam County" and "has provided an opportunity for school children from all over the Pacific Northwest to learn about and observe wildlife, igniting countless imaginations and

---

[14] Beebe Decl., ¶ 2.

[15] *Id.*

[16] *Id.*, ¶ 3 & Ex. A (Wash. S. Res. 8612 (adopted Jan. 20, 2011)).

[17] *Id.*, ¶ 2.

[18] *Id.*, ¶ 5; Morgan Decl., ¶¶ 2-4 & Exs. A-C; *see also id.*, ¶ 6 & Ex. E (Walden Dep. at 146:17-147:8, 148:17-23 (noting Trip Advisor and Yelp "can be helpful" and are "a repository of individuals' experiences")); *see also* ECF No. 1 (Compl. at ¶¶ 40-41 (citing TripAdvisor and Yelp as relevant and authoritative)).

[19] *See generally* Dunlop Decl.; Humphreys Decl.; Humphreys Decl.; Garrett Decl.; McEntire Decl.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
(3:18-cv-06025-RSL)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1   encouraging the continued stewardship of our land and animals."[20]   Lloyd and Catherine's

2   grandsons, Robert and James, and their uncle Kenneth, have continued that tradition, marking

3   three generations committed to the sound stewardship of the animals and the Sequim community.[21]

4        ## 2.   *Animals at Olympic Game Farm*

5        Olympic Game Farm is currently home to more than 350 animals, each with a different

6   story.[22]   Historically, many animals were retired actors; more recently, however, Olympic Game

7   Farm has become a home for animals with no place else to go that would otherwise be

8   euthanized.[23]   For example, Olympic Game Farm offered a home to a coyote named Koda that

9   was badly injured by a shotgun blast to the face and could not survive in the wild after extensive

10  jaw-reconstructive surgery; it rehomed two geriatric tigers and an older lioness from a private

11  owner suffering from Alzheimer's who could no longer care for the animals; and it gave a home

12  to an elder tiger when the prior owner lost her license and was faced with euthanizing the animal.[24]

13  It has also provided a home to Sika deer confiscated by the Washington Department of Fish and

14  Wildlife ("**WDFW**").[25]   In addition, many animals have been born at Olympic Game Farm over

15  the decades, including elk, bison, llamas, black bears, brown bears, and hybrid wolf-dogs.[26]

16       ## 3.   *Care for Animals at Olympic Game Farm Under the Animal Welfare Act*

17       The Animal Welfare Act "sets general standards for humane care and treatment that must

18  be provided for certain animals that are … exhibited to the public."[27]   Congress assigned

---

19  [20] Beebe Decl., ¶ 3 & Ex. A (Wash. S. Res. 8612 (adopted Jan. 20, 2011)).

20  [21] *Id.*, ¶ 4.

21  [22] *Id.*, ¶¶ 11-12.

22  [23] *Id.*, ¶ 12.

     [24] *Id.*

23  [25] *Id.*, ¶ 31 & Exs. P, Q.

24  [26] *Id.*, ¶ 12.

25  [27] *Id.*, ¶ 13 & Ex. F (USDA Animal Care "Blue Book" at 1).  The USDA's regulations set general standards for veterinary care (§ 2.40); food storage and waste disposal (§ 3.125); shelter, housing, drainage and shade (§ 3.127); enclosure sizes (§ 3.128); feeding and watering (§§ 3.129-30); training and staffing of employees (§ 3.132); and

26  separation of animals (§ 3.133), among others.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4
(3:18-cv-06025-RSL)

1    enforcement responsibility to the USDA, specifically the Animal and Plant Health Inspection

2    Service ("**APHIS**").  Olympic Game Farm is licensed by USDA to exhibit animals and is routinely

3    inspected.[28]  The primary inspector over the last decade is Dr. Diane Forbes, DVM.[29]  Dr. Forbes

4    testified that Olympic Game Farm complies with the AWA.[30]  The most recent inspections found

5    zero non-compliance issues.[31]  Dr. Forbes also testified she has *never* found evidence of animal

6    cruelty or abuse,[32] and that she has seen consistent improvements in animal care and welfare:

7            Q.    You've been inspecting the Game Farm off and on from 2007 through
                   about 2019; is that correct?
8
             A.    Yes.  That's correct.
9
             Q.    And it would be fair to characterize the Game Farm as demonstrating a
10                 pattern of continuous improvement over that time period?

11           A.    Yes.[33]

12   While there have been "teachable moments" and minor issues like fence fixes or chipping paint,

13   Olympic Game Farm "took quick and appropriate action" to address the issue.[34]  That, as

14   Dr. Forbes testified, is a far cry from facilities with "lots of noncompliances."[35]  Olympic Game

15   Farm enjoys "a good relationship" with USDA and is "always willing to make changes based on

16   recommendations," and if the USDA asks "[Olympic Game Farm] to do something, they do it."[36]

17   Olympic Game Farm's veterinarian agrees:  "the overall facility condition is very good[.]"[37]

18   [28] *Id.*, ¶¶ 8-10, 13 & Exs. C-E.

19   [29] *See id.*; *see also* Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 222:18-25).

20   [30] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 197:8-198:20, 206:25-207:9, 208:15-209:7, 212:8-215:11, 220:24-221:11).

21   [31] Beebe Decl., ¶¶ 8-10 & Exs. C-E.

22   [32] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 198:13-20); *see also id.*, ¶ 11 & Ex. J (Deposition of Tara Black ("**Black Dep.**") at 153:15-154:13, 155:16-156:5 (attending veterinarian not aware of any animal cruelty; all animals treated humanely)).

23   [33] *Id.*, ¶ 5 & Ex. D (Forbes Dep. at 222:18-25, 227:3-11).

24   [34] *Id.* (Forbes Dep. at 200:8-201:16, 205:7-19).

25   [35] *Id.* (Forbes Dep. at 36:1-7).

     [36] *Id.* (Forbes Dep. at 182:14-183:2, 184:5-12).

26   [37] *Id.*, ¶ 11 & Ex. J (Black Dep. at 81:4-12, 84:14-16).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

1    **B.      Procedural Background**

2         In 2017, animal-rights activists filed a series of complaints with the USDA, raising false

3    allegations about enclosures, shelters, feeding practices, and animal care.[38]  The USDA thoroughly

4    investigated those complaints, conducting four separate *unannounced* inspections over a 12-month

5    period and ultimately concluding that the complaints were "not supported."[39]   The USDA

6    determined that "all the enclosures and animal areas meet the requirements of the Animal Welfare

7    Regulations for size, drainage, shelter from inclement weather, and structures allowing for normal

8    social and postural adjustment";[40] "shelters were found to be in compliance and provided the

9    animals with sufficient protection from inclement weather";[41] "enclosures were found to be well

10   drained, and all animals had dry, bedded shelters";[42] "enclosures for the wolves and the big cats

11   provided at least the minimum space required by the Animal Welfare Act";[43] "there was no

12   evidence of stress or abnormal behavior patterns in the wolves, big cats, or any other species at the

13   park";[44] and "there was no evidence of malnutrition, poor condition, or debility in those

14   animals."[45]

15        Undeterred, ALDF filed suit, making the same allegations that the USDA previously found

16   to be "not supported."  Before doing so, the California-based activists did not undertake any efforts

17   to determine if it had any "members" residing in Clallam County.[46]  It did not attempt to contact

18

19   _____

20   [38] *Id*., ¶ 5 & Ex. D (Forbes Dep. at 205:20-206:13, 206:25-207:16, 208:7-209:7, 209:19-210:12, 211:16-215:11 & Exs. 42, 46, 47, 48, 51).

21   [39] *Id*.

      [40] *Id.* (Forbes Dep. at Ex. 46).
22   [41] *Id.* (Forbes Dep. at Ex. 48).

23   [42] *Id.* (Forbes Dep. at Ex. 51).

24   [43] *Id.* (Forbes Dep. at Ex. 49).

      [44] *Id.*
25   [45] *Id.*

26   [46] *Id*., at ¶ 6 & Ex. E (Walden Dep. at 56:18-23).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6
(3:18-cv-06025-RSL)

the neighbors of Olympic Game Farm or anyone else in Sequim or Clallam County.[47]  Instead, ALDF surreptitiously sent two consultants, neither of whom was a licensed private investigator, to Olympic Game Farm for the sole purpose of filing suit and advancing its activist agenda.[48]

## III.  STATEMENT OF ISSUES

1. Whether ALDF's claim for violation of the ESA by allegedly "harassing" or "harming" animals should be dismissed.

2. Whether ALDF's claim for violation of the ESA by illegally possessing an animal should be dismissed.

3. Whether ALDF's claim for public nuisance should be dismissed.

## IV.  EVIDENCE RELIED UPON

Defendants rely upon the Declarations of Robert Beebe, Jason Morgan, Michael Briggs, Ellie Armstrong, Brian Garrett, James McEntire, Theresa Teas, Ruth LaBarge, Isabelle Dunlop, Richard Humphreys, and the record and file herein.

## V.  ARGUMENT AND AUTHORITY

### A.    Standard for Summary Judgment

A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49]  A factual dispute is material if its resolution will affect the outcome of the litigation; it is genuine only if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party."[50]  The basic issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[51]

---

[47] *Id*. (Walden Dep. at 106:22-107:14).

[48] *Id*. (Walden Dep. at 106:10-17, 286:6-10).

[49] Fed. R. Civ. P. 56(a).

[50] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[51] *Id.* at 251-52; *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 685-86 (9th Cir. 2017).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  **B.     ALDF's Claim I for Violation of the ESA Fails as a Matter of Law**

2         ALDF bears the burden of proving that each of the Defendants are violating the ESA by

3  illegally harassing or harming animals protected by that statute.  ALDF cannot carry that burden.

4  As discussed below, the brown bears and the wolf-dog hybrids at Olympic Game Farm are not

5  listed species protected by the ESA, and the Canada lynx is excluded from relevant provisions of

6  the ESA.  Moreover, by regulation, generally accepted animal husbandry practices that comply

7  with the Animal Welfare Act do not violate the ESA.  Olympic Game Farm meets or exceeds those

8  standards.  Summary judgment dismissing ALDF's claim for violation of the ESA is proper.

9         *1.     The Endangered Species Act Protects Only Listed Species of Animals*

10        The ESA was passed in 1973 with the intent of protecting threatened and endangered

11 species and the habitat upon which they depend.[52]  The ESA authorizes the Secretary of the Interior

12 (delegated to the Fish and Wildlife Service ("**FWS**")) to list species as threatened or endangered.[53]

13 A listing may be limited geographically, by subspecies, or both.  Relevant here, lions (*Panther leo*

14 *leo*) and tigers (*Panthera tigris*) are listed as endangered "wherever found."[54]  Grizzly bears (*Ursus*

15 *arctos horribilis*) "of the 48 conterminous States of the United States" are listed as threatened; but,

16 grizzly bears from Alaska or Canada are not protected, nor are bears of other *Ursus arctos*

17 subspecies, such as Kodiak bears and brown bears from Europe or Asia.[55]  Although Canada lynx

18 is listed as threatened, captive-born lynx are excluded from certain protections in the ESA.[56]  And

19 although the gray wolf was previously listed as threatened in certain portions of the United States,

20 it has now been removed from the list and is no longer protected by the ESA.[57]

21

22  [52] *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 159-60 (1978).

23  [53] 16 U.S.C. § 1533.

24  [54] 50 C.F.R. § 17.11(h).

    [55] *Id.* at § 17.40(b)(2).

25  [56] *Id.* at § 17.40(k); *see also id.* at § 17.40(k)(4)(i) ("You may take lawfully obtained captive lynx without a permit.").

26  [57] 85 Fed. Reg. 69778 (Nov. 3, 2020).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
(3:18-cv-06025-RSL)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

105788022.9 0069042-00001

The ESA does not prohibit the actual possession of an endangered or threatened species, unless it was illegally captured or collected.[58]  The ESA does, however, make it unlawful to "take" any species listed as endangered and prohibits the "take" of a species listed as threatened if provided by special regulation.[59]  The term "take" is defined as "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."[60]  The terms "harass" and "harm" are relevant here.  The term "harass" includes "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering."[61]  That definition, however, is limited for captive wildlife:

[W]hen applied to captive wildlife, does not include generally accepted:

    (1) Animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act,

    (2) Breeding procedures, or

    (3) Provisions of veterinary care for confining, tranquilizing, or anesthetizing, when such practices, procedures, or provisions are not likely to result in injury to the wildlife.[62]

"[M]easures necessary for the proper care and maintenance of listed wildlife in captivity do not constitute 'harassment' or 'taking.'"[63]  The term "harm" is more serious and is limited to "an act

---

[58] 16 U.S.C. § 1538(a)(1); 63 Fed. Reg. at 48636 ("Since Congress chose not to prohibit the mere possession of lawfully-taken listed species in Section 9(a)(1) of the Act, the Service believes that congressional intent supports the proposition that measures necessary for the proper care and maintenance of listed wildlife in captivity do not constitute 'harassment' or 'taking.'").

[59] 16 U.S.C. § 1538(a)(1)(B).

[60] Id. at § 1532(19).

[61] 50 C.F.R. § 17.3.

[62] Id.

[63] Captive-bred Wildlife Regulation, 63 Fed. Reg. 48634, 48636 (Sept. 11, 1998) ("The purpose of amending the [FWS] definition of 'harass' is to exclude proper animal husbandry practices that are not likely to result in injury from the prohibition against 'take.'  Since captive animals can be subjected to improper husbandry as well as to harm and other taking activities, the [FWS] considers it prudent to maintain such protections, consistent with Congressional intent.").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1    which actually kills or injures wildlife."[64]   The terms "harass" and "harm" have "a different

2    character when applied to an animal in captivity than when applied to an animal in the wild."[65]

3        The ESA does not establish standards for animal care of listed species in captivity.[66]

4    "Congress elected not to prescribe captive care requirements in the ESA, or expand the definition

5    of 'take' to include the humane treatment of endangered species in captivity."[67]   Instead, those

6    standards are issued by the USDA pursuant to the Animal Welfare Act.[68]   Under those standards,

7    "a licensed exhibitor 'take[s]' a captive animal in violation of the ESA's section 9(a)(1) only when

8    its conduct gravely threatens or has the potential to gravely threaten the animal's survival."[69]

9        **2.    *Olympic Game Farm's Brown Bears Are Not Protected by the ESA Because They
10              Are Not Subspecies* Ursus arctos horribilis *of the 48 Conterminous States of the
               United States***

11        As noted above, only grizzly bears that are both subspecies *Ursus arctos horribilis* and "of

12    the 48 conterminous States of the United States" are protected by the ESA.[70]   Olympic Game Farm

13    currently has 11 brown bears, none of which are protected by the ESA:

14    •    <u>Miska, Yuri, Tug, and Bella</u>.  ALDF recently stipulated that these brown bears are
15         not protected by the ESA.[71]

16    •    <u>Donald and Moxie</u>.  Olympic Game Farm acquired these bears from Ruth LaBarge
17         in Alberta, Canada.[72]   Ms. LaBarge acquired them from Northwood Zoo and
          Animal Sanctuary in Ontario, Canada, where they were born in captivity.[73]

---

18    [64] 50 C.F.R. § 17.3.

19    [65] *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 189 F. Supp. 3d 1327, 1350 (S.D. Fla.
20    2016), *aff'd*, 879 F.3d 1142 (11th Cir. 2018), *adhered to on denial of reh'g*, 905 F.3d 1307 (11th Cir. 2018).

      [66] *Id*. at 1354.

21    [67] *Id*.

22    [68] *Id*. (Congress "left such responsibility with the Secretary of Agriculture under the authority granted by the AWA
      and his delegee, APHIS.").

23    [69] *Id*. at 1355.

24    [70] 50 C.F.R. § 17.40(b)(2).

      [71] Morgan Decl., ¶ 8 & Ex. G.

25    [72] Declaration of Ruth LaBarge ("**LaBarge Decl.**"), ¶¶ 8, 10-17 & Exs. B-G; *see also* Beebe Decl., ¶ 15 & Ex. G.

26    [73] LaBarge Decl., ¶¶ 8-9 & Ex. A.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Through DNA sequencing, Olympic Game Farm confirmed they descend from brown bears from the ABC Islands in Alaska and are not grizzly bears of subspecies *Ursus arctos horribilis* of the 48 conterminous States of the United States.[74]

- <u>Lillie, Connie, Fie, Fee, and Fumm</u>.  These bears were born in captivity at Olympic Game Farm.[75]  DNA sequencing confirmed these bears descended from brown bears in Alaska and are not grizzly bears of subspecies *Ursus arctos horribilis* of the 48 conterminous States of the United States.[76]

Four other brown bears previously resided at Olympic Game Farm, none of which were protected by the ESA:  Patches, Good Mama, Marsha, and Samantha.  Although from different litters, these bears are siblings born in captivity at Olympic Game Farm.[77]  They descended from brown bears in Alaska and are not grizzly bears of subspecies *Ursus arctos horribilis* of the 48 conterminous States of the United States.[78]  To be sure, at ALDF's request, the University of California at Santa Cruz, Paleogenomics Lab determined through phylogenetic analysis that Good Mama is a brown bear descending from eastern Europe and western Alaska.[79]  ALDF had no evidence to the contrary when it filed suit and, despite more than two years of litigation, is admittedly not aware of any contrary evidence now.[80]  Because none of the bears at Olympic Game Farm are of the subspecies *Ursus arctos horribilis* of the 48 conterminous States of the United States, they are not protected by the ESA.

**3.      *Olympic Game Farm's Wolf-Dog Hybrids Are Not Protected by the ESA Because Gray Wolves Are Not Listed as Threatened and Because They Are Not Pure Wolves from a Protected Area in the 48 Conterminous States of the United States***

ALDF's claim that the wolf-dog hybrids at Olympic Game Farm at protected by the ESA must be dismissed for three separate and independent reasons.  First, the gray wolf is no longer

---

[74] Declaration of Ellie Armstrong ("**Armstrong Decl.**"), ¶¶ 4-5 & Ex. B (Report at 1, 12-13).

[75] Beebe Decl., ¶ 16.

[76] Armstrong Decl., ¶¶ 4-5 & Ex. B (Report at 1, 12-13); *see also* Beebe Decl., ¶ 16.

[77] Beebe Decl., ¶ 16.

[78] *See id.*; *see also* Armstrong Decl., ¶¶ 4-5 & Ex. B (Report at 1, 12-13).

[79] Morgan Decl., ¶ 9 & Ex. H (Deposition of Beth Shapiro at 15:10-17:18, 17:22-19:18, 20:14-23, 27:9-28:20, 30:5-21, 31:17-20, 38:12-22, 41:6-15 & Ex. 2).

[80] *Id.*, ¶ 6 & Ex. E (Walden Dep. at 173:8-174:19).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1   listed as a protected species under the ESA.[81]   As a result, there is no present controversy

2   concerning these animals and ALDF's claim is moot and must be dismissed as a matter of law.[82]

3   Second, even if not moot, ALDF's claim fails because the wolf-dog hybrids at Olympic

4   Game Farm are not protected by the ESA.   The ESA only protected gray wolves in specific

5   geographic areas of the 48 conterminous States of the United States; it did not protect wolves from

6   Alaska or Canada.[83]   The parties' experts agree that Olympic Game Farm's wolf-dog hybrids

7   descend from Canada.   ALDF's expert opined that "[t]he genetic ancestry of the OGF gray wolves

8   is most similar to wolves in Canada."[84]   Olympic Game Farm's expert opined that the wolf-dog

9   hybrids "are descended from wolves local to Northwestern Canada."[85]   Indeed, of the 11 wolf-dog

10   hybrids at Olympic Game Farm in the last five years, seven (Jacob, Leah, Angie, Lily, Coco,

11   Ginger, and Brutus) are siblings born at Olympic Game Farm and descended from animals

12   acquired from Alaska.[86]   The other four (Seth, Sam, Tonka, and Grace) were received from a

13   licensed facility where they were born in captivity and descended from animals from Canada and

14   Alaska.[87]   There is no evidence Olympic Game Farm's wolf-dog hybrids were captured from, or

15   descended from wolves captured from, the wild in the 48 conterminous States of the United States.

16   Third, the wolf-dog hybrids at Olympic Game Farm are not pure gray wolves; rather, they

17   are hybrids that are regulated as "dogs" by the USDA.[88]   In *United States v. Kapp*, the Seventh

18   Circuit concluded that the FWS has a policy that does not protect hybrids under the ESA and that

19   "crosses between tigers or leopards (including all subspecies) and members of unlisted species or

20

[81] 85 Fed. Reg. 69778.

21   [82] *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 804 (9th Cir. 2009) ("Because the bald eagle
22   has been delisted, no present controversy can remain.").

[83] *See* 40 C.F.R. § 17.11(h).

23   [84] Morgan Decl., ¶ 10 & Ex. I (Supp. Report of Bridgett vonHoldt at 3).

24   [85] Armstrong Decl., ¶¶ 4, 6 & Ex. B (Report at 1, 16-17).

[86] Beebe Decl., ¶ 17.

25   [87] *Id.*, ¶¶ 17-21 & Exs. H-K.

26   [88] *Id.*, ¶ 17.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

1   subspecies, such as lions, are not protected [under the ESA]."[89]  Similarly, in *Kuehl v. Sellner*, a

2   district court found that hybrids composed of 75 percent listed wolf (*Canis lupus*) and 25 percent

3   dog (*Canis lupus familiarus*) were not protected by the ESA.[90]  These decisions are consistent with

4   USDA regulations that provide "[c]rosses between wild animal species and domestic animals, such

5   as dogs and wolves … are considered to be domestic animals," not wild animals.[91]  Here, genomic

6   testing confirmed that seven wolf-dog hybrids (Jacob, Leah, Angie, Lily, Coco, Ginger, and

7   Brutus)—all of which were born in captivity at Olympic Game Farm—are hybrids.[92]

8   Documentation establishes that two other animals (Seth and Sam) are also hybrids.[93]  The

9   remaining two (Grace and Tonka) are "high content" wolf-dog hybrids.[94]  All of the wolf-dog

10  hybrids at Olympic Game Farm are "domestic animals" and are not protected by the ESA.[95]

11      ### 4.   *Olympic Game Farm's Canada Lynx Is Not Protected by the ESA Because It Was Born in Captivity and Lawfully Acquired*

12          Pursuant to Section 4(d) of the ESA, the FWS issued "take" regulations for Canada lynx.[96]

13  Those regulations provide that there is no "take" protection for a lynx that was born in captivity

14  and lawfully acquired.[97]  Olympic Game Farm has one Canada lynx, which was born in captivity

15  and lawfully acquired.[98]  ALDF is not aware of any contrary evidence.[99]  Because there is no

16  "take" protection for the only Canada lynx at Olympic Game Farm, summary judgment dismissing

17  ALDF's claim that Defendants violated the ESA by taking a Canada lynx is proper.

---

[89] *United States v. Kapp*, 419 F.3d 666, 673 (7th Cir. 2005) (emphasis omitted).

[90] *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 689 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018).

[91] 9 C.F.R. § 1.1.

[92] *See* Armstrong Decl., ¶¶ 4, 6 & Ex. B (Report at 1, 16-17); *see also* Beebe Decl., ¶ 17.

[93] Beebe Decl., ¶¶ 17-19 & Exs H, I.

[94] *Id.*, ¶¶ 17, 20-21 & Exs. J, K.

[95] *See id.*, ¶ 17; *see also Kapp*, 419 F.3d at 673; *Kuehl*, 161 F. Supp. 3d at 689.

[96] 50 C.F.R. § 17.40(k).

[97] *Id.* at § 17.40(k)(4)(i) ("You may take lawfully obtained captive lynx without a permit.").

[98] Beebe Decl., ¶ 22 & Exs. L-N.

[99] Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 180:6-13).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
(3:18-cv-06025-RSL)

1       **5.**    ***Defendants Have Not Committed a "Take" of Any Species Protected by the ESA***
2                     ***Because Olympic Game Farm Meets or Exceeds the Standards in the AWA***

In addition to proving an animal is protected by the ESA, ALDF bears the burden of proving that Defendants engaged in a "take" of, or caused "harm" to, an animal protected by the ESA. To do so, ALDF must establish that Defendants are (a) harassing protected species *and* not meeting AWA standards for those animals, or (b) injuring or killing protected species.[100] ALDF has no credible evidence to support either contention. Instead, ALDF's claim is nothing more than a thinly veiled attempt to change the standards of care for captive animals through judicial activism and reformation.[101] That is best left to Congress or the USDA. Although it admits that the Animal Welfare Act "provides minimum standards of care for animals,"[102] ALDF believes that the Animal Welfare Act is insufficient and seeks to import standards promulgated by private membership organizations, such as the Association of Zoos & Aquariums, and the opinions of its own litigation experts to establish the appropriate standard of care. Other courts have rejected this attempt as unconstitutional, as potentially subjecting zoos and animal facilities to "liability to special interest groups despite their compliance with APHIS' captive care standards," and as "substitut[ing] the judgment of a federal trial court judge for the technical expertise of the responsible agency."[103] This Court should do the same. Because the USDA has repeatedly confirmed Olympic Game Farm meets or exceeds the standards in the Animal Welfare Act and because Olympic Game Farm has not injured or killed a protected animal, summary judgment is proper.

    **a.**    **Brown Bears**

Even assuming one or more of Olympic Game Farm's brown bears is protected by the ESA, ALDF has failed to carry its burden of proving a "take" or "harm". The USDA concluded

---

[100] 50 C.F.R. § 17.3.

[101] Waltz, *supra*, 45 Colum. J. Envtl. L. at 52 ("reform can occur within the judicial system's analysis of the ESA").

[102] *Id.* at 45 (internal quotation marks and citation omitted); Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 84:6-12).

[103] *People for the Ethical Treatment of Animals*, 189 F. Supp. 3d at 1354-55; *see also Hill v. Coggins*, 423 F. Supp. 3d 209, 220, 222 (W.D.N.C. 2019).

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1    that the bears' enclosures and shelters meet the requirements of the Animal Welfare Act.[104]  The

2    bears are fed a species appropriate diet—comprised mainly of meat, grains, fruit, and berries—

3    that is approved by Olympic Game Farm's attending veterinarians and meets the requirements of

4    the Animal Welfare Act.[105]  ALDF has no evidence that Defendants have harmed, harassed, or

5    injured any of the bears at Olympic Game Farm, let alone any evidence that any Defendant has

6    caused stress or harm to the brown bears while residing at Olympic Game Farm.[106]  Indeed, several

7    of the bears have lived well beyond normal lifespans for bears in captivity.[107]

8                    **b.       Wolf-Dog Hybrids**

9            The same is true for the wolf-dog hybrids at Olympic Game Farm:  even assuming the

10   wolf-dog hybrids are protected by the ESA, ALDF has failed to carry its burden of proving that a

11   "take" or "harm" is occurring.  The enclosures, shelters, care, and living conditions provided to

12   the wolf-dog hybrids meet or exceed the requirements of the Animal Welfare Act.[108]  In rejecting

13   similar allegations before ALDF filed this action, the USDA concluded that there "was no evidence

14   of stress or abnormal behavior patterns in the wolves" and "no evidence of malnutrition, poor

15   condition, or debility."[109]  Contrary to ALDF's supposition, "enrichment" is not required by the

16   Animal Welfare Act for gray wolves or wolf-dog hybrids.  But even if it was, Olympic Game Farm

17   does, in fact, provide enrichment to the wolf-dog hybrids, which the USDA has characterized as

18   going above and beyond.[110]  Simply put, the wolf-dog hybrids are well cared for.[111]

19   ────────────────────

20   [104] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 206:25-207:9, 208:25-209:7, 214:18-215:1, 215:8-11); *see also* Declaration of Michael Briggs ("**Briggs Decl.**"), ¶¶ 5-8 & Ex. B.

21   [105] Beebe Decl., ¶ 23, 32 & Ex. R; Briggs Decl., ¶ 8; Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 217:22-218:6, 219:23-220:12, 220:24-221:11); *id.*, ¶ 11 & Ex. J (Black Dep. at 76:8-77:4, 77:15-78:18, 84:14-16).

22   [106] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at Ex. 49); *see also id.* ¶ 6 & Ex. E (Walden Dep. at 179:9-17 (ALDF is not aware of condition of any brown bears before arrival at Olympic Game Farm).

23   [107] Briggs Decl., ¶¶ 5-8 & Ex. B.

24   [108] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 213:24-214:8).

25   [109] *Id.*, (Forbes Dep. at Ex. 49).

     [110] *Id.*, (Forbes Dep. at 194:23-195:10, 220:24-221:1); *see also* Briggs Decl., ¶ 9.

26   [111] Briggs Decl., ¶¶ 5-7, 9 & Ex. B; *see also* Morgan Decl., ¶ 11 & Ex. J (Black Dep. at 153:15-154:13, 155:16-156:5).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
(3:18-cv-06025-RSL)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

105788022.9 0069042-00001

1         **c.**     **Canada Lynx**

2     Likewise, assuming the Canada lynx is protected by the ESA (which it is not), ALDF has

3 failed to carry its burden of proving that a "take" or "harm" is occurring. The enclosures, shelters,

4 care, and living conditions provided to the Canada lynx meet or exceed the requirements of the

5 Animal Welfare Act.[112] The Canada lynx is well cared for.[113] Although the Complaint alleges

6 that some medication may not have been given to the Canada lynx in 2017, Olympic Game Farm's

7 attending veterinarian testified that the medication was not dispensed at her instruction because

8 the lynx was switched to a different medication to treat that condition.[114] ALDF has no evidence

9 that Defendants caused stress or harm to the Canada lynx while residing at Olympic Game Farm.[115]

10         **d.**     **Lions**

11     ALDF's threadbare allegations that the lions are kept "in tiny, barren, inadequate

12 enclosures" and that they do not have adequate shelter were made and previously rejected by the

13 USDA as "not supported" before ALDF filed this lawsuit.[116] The USDA found that "there was no

14 evidence of stress or abnormal behavior patterns" in the lions and "no evidence of malnutrition,

15 poor condition, or debility."[117] Olympic Game Farm has not received a notice of violation,

16 noncompliance, or "teachable moment" from the USDA concerning any lion or its enclosure.[118]

17 To the contrary, the USDA concluded the lions' enclosures and shelters meet the requirements of

18

19

---

20 [112] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 215:2-11).

21 [113] Briggs Decl., ¶¶ 5-7, 10 & Ex. B.

[114] Morgan Decl., ¶ 11 & Ex. J (Black Dep. at 84:14-16, 145:9-18, 152:2-21); Beebe Decl., ¶ 24.

22

23 [115] Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 180:14-21 (ALDF is not aware of condition of the Canada lynx before arrival at Olympic Game Farm)).

24 [116] ECF No. 1 (Compl. at ¶¶ 60-63); *see also* Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 213:15-23 & Exs. 46, 48, 49); *see also id*., ¶ 6 & Ex. E (Walden Dep. at 166:12-167:2 (ALDF is not aware of condition of any lion before arrival at Olympic Game Farm)).

25 [117] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at Ex. 49).

26 [118] Beebe Decl., ¶ 25.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

105788022.9 0069042-00001

1   the Animal Welfare Act.[119]  While "enrichment" is not required by the Animal Welfare Act for

2   lions, Olympic Game Farm does provide species-appropriate enrichment—such as structures for

3   climbing, scratching posts, rub brushes, rope tugs, and balls, among others, as well as swimming

4   pools in the summer—and provides heaters in the winter.[120]  The lions have been well cared for.[121]

5           e.      **Tigers**

6           ALDF's allegations concerning Olympic Game Farm's three tigers are similarly misguided.

7   Relying on citations to the Association of Zoos & Aquariums—a private organization that no

8   animal care facility in the United States is required to join and in which Olympic Game Farm is

9   not a member—ALDF asserts that the tigers' enclosures are small and that they lack enrichment.[122]

10  As with the lions, the USDA already investigated and rejected these allegations as "not supported,"

11  finding that "there was no evidence of stress or abnormal behavior patterns" in the tigers and "no

12  evidence of malnutrition, poor condition, or debility."[123]  The USDA inspector also testified that

13  the tigers' enclosures and shelters meet the requirements of the Animal Welfare Act.[124]  Contrary

14  to ALDF's allegation, "water features," which are a form of enrichment, are not required by the

15  Animal Welfare Act for tigers.  But even if they were, Olympic Game Farm does, in fact, provide

16  enrichment—such as structures for climbing, scratching posts, rub brushes, rope tugs, and balls,

17  among others, as well as swimming pools in the summer—and heaters in the winter.[125]  And the

18

19

20  [119] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 206:25-207:9, 208:25-209:7, 213:15-23, 215:8-11); Briggs Decl., ¶¶ 5-
    7, 11 & Ex. B.

21  [120] Beebe Decl., ¶ 25; Briggs Decl. ¶ 11; Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 194:23-195:10, 220:24-221:1).

22  [121] Beebe Decl., ¶ 25; Briggs Decl., ¶¶ 5-7, 11 & Ex. B.

23  [122] ECF No. 1 (Compl. at ¶¶ 68-72, 75); *see also* Briggs Decl., ¶ 2; Morgan Decl., ¶ 13 & Ex. L (Deposition of Lisa
    Harrenstien (**Harrenstien Dep.**) at 29:14-19, 30:12-31:14).

24  [123] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 214:9-17 & Exs. 46, 48, 49); *see also id.*, ¶ 6 & Ex. E (Walden Dep. at
    172:17-25 (ALDF is not aware of condition of any tiger before arrival at Olympic Game Farm)).

25  [124] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 206:25-207:9, 214:9-17); Briggs Decl., ¶¶ 5-7, 12 & Ex. B.

26  [125] Beebe Decl., ¶ 26; Briggs Decl. ¶ 12; Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 194:23-195:10, 220:24-221:1).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17
(3:18-cv-06025-RSL)

1  USDA testified that "some of the animals just naturally pace," but found no evidence of

2  "stereotypic" pacing evidencing stress.[126]  The tigers have been well cared for.[127]

3      ALDF's other complaints regarding the tigers are equally erroneous.  Although ALDF

4  complained "one of the tigers at OGF exhibits lameness,"[128] when asked, ALDF could not identify

5  the tiger by name, by striping, or other attribute and could not explain what it meant by

6  "lameness."[129]  Nor does ALDF have evidence Defendants caused the alleged lameness, as ALDF

7  does not have evidence of the tiger's condition when Olympic Game Farm acquired it and does

8  not know the substrate of the tiger's enclosure.[130]  ALDF's complaint about "Amadeus," a geriatric

9  tiger that died more than three years ago, does not fare any better.[131]  Tigers in captivity typically

10  live 14-16 years, and Amadeus was 20 years old when he died.[132]  Although Amadeus had chronic

11  medical conditions, he received appropriate veterinary care.[133]  So do all of the other tigers.[134]

12  **C.  ALDF's Claim II for Violation of the ESA Fails Because Defendants Do Not Possess Any Species Taken in Violation of the ESA**

13
14      ALDF alleges that Defendants are violating the ESA by illegally possessing animals taken

15  in violation of the ESA.[135]  In so arguing, ALDF does not identify any such animal, whether by

16  animal species, name, color, or otherwise.[136]  The ESA does not prohibit any possession of

17  protected species; rather, it prohibits the possession of a protected species taken in violation of the

18  _____

19  [126] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 192:16-193:24, 207:10-16 & Ex. 49); *see also* Briggs Decl., ¶ 12.

    [127] Briggs Decl., ¶¶ 5-7, 12 & Ex. B.

20  [128] ECF No. 1 (Compl. at ¶ 72).

21  [129] Morgan Decl., ¶ 6 & Ex. D (Walden Dep. at 171:10-172:10).

22  [130] *Id.* (Walden Dep. at 172:11-172:25).

    [131] ECF No. 1 (Compl. at ¶ 73).

23  [132] Beebe Decl., ¶ 27; Briggs Decl. ¶ 13.

24  [133] Beebe Decl., ¶ 27; Briggs Decl. ¶ 13; Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 191:5-12, 94:15-21).

    [134] Briggs Decl. ¶¶ 5-7, 12-13 & Ex. B.

25  [135] ECF No. 1 (Compl., ¶¶ 102-08).

26  [136] *See id.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   ESA—*i.e.*, it was illegally captured.[137]  All of the ESA-protected animals at Olympic Game Farm

2   were born in captivity and lawfully acquired.[138]  ALDF has no admissible evidence to the contrary.

3   Summary judgment dismissing Claim II of ALDF's Complaint is, thus, appropriate and proper.

4   **D.     ALDF's Claim III Fails Because Olympic Game Farm Is Not a Public Nuisance**

5          ALDF's spurious claim that Olympic Game Farm is a public nuisance is a blatant attempt

6   to impose its animal-rights narrative onto the Sequim community and to shut down a beloved

7   institution.[139]  If it were otherwise, ALDF would have contacted the neighbors of Olympic Game

8   Farm and residents of Sequim or Clallam County before filing suit, but it did not.[140]  Had it done

9   so, ALDF would have learned Olympic Game Farm enjoys broad support from its neighbors,

10  private citizens, and the business community.  Regardless, ALDF's public nuisance claim fails as

11  a matter of law.  ALDF has failed to establish that Olympic Game Farm constitutes a nuisance

12  affecting the rights of an entire community and that ALDF suffered a special injury distinct from

13  the public, both of which are required to maintain a public nuisance claim under Washington law.

14  Moreover, the statutes upon which ALDF relies do not provide for private causes of action and,

15  even if they did, Olympic Game Farm complies with all applicable laws.

16         ***1.     ALDF Cannot Establish Impact to the Entire Community or Neighborhood***

17         A nuisance "consists in unlawfully doing an act, or omitting to perform a duty, which act

18  or omission either annoys, injures or endangers the comfort, repose, health or safety of others …

19  or in any way renders other persons insecure in life, or in the use of property."[141]  A public nuisance

20  is "one which affects equally the rights of an entire community or neighborhood, although the

21  ─────────────────

22  [137] 16 U.S.C. § 1538(a)(1); 63 Fed. Reg. at 48636 ("Since Congress chose not to prohibit the mere possession of lawfully-taken listed species in Section 9(a)(1) of the Act, the Service believes that congressional intent supports the proposition that measures necessary for the proper care and maintenance of listed wildlife in captivity do not constitute
23  'harassment' or 'taking.'").

24  [138] *See*, *e.g.*, Beebe Decl., ¶ 28.

    [139] ECF No. 1 (Compl. at ¶¶ 109-22).

25  [140] *Id*. (Walden Dep. at 106:22-107:14).

26  [141] Wash. Rev. Code § 7.48.120.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  extent of the damage may be unequal."[142]  In Washington, a party may maintain a public nuisance

2  claim if the identified nuisance affects the rights of all members of the community.[143]  However,

3  a business operation that "may have annoyed the two witnesses and have been an unpleasant

4  experience for them" is not a public nuisance as a matter of law.[144]  Thus, a business that "shocks

5  the taste" of some people, but not all neighbors or community members, is not a public nuisance.[145]

6  ALDF cannot demonstrate that Olympic Game Farm is a public nuisance that affects the

7  entire Sequim community.  Olympic Game Farm enjoys the support of its neighbors, who testified

8  that it is "a very good neighbor" and "a positive benefit to our neighborhood and to the Sequim

9  community"; that its animals are "happy, healthy, and well cared for"; that they "have never heard

10  a single complaint about Olympic Game Farm, its animals, or its employees and staff"; and that

11  ALDF's characterization of Olympic Game Farm as a nuisance is "baseless."[146]  Local civic

12  leaders and the business community support Olympic Game Farm and testified that it is a "vital

13  part of Sequim's economy," "is not a detriment to the Sequim community or surrounding

14  communities," and has the "full support of the entire Sequim community."[147]  The Washington

15  State Senate recognized the importance of Olympic Game Farm and that it "continues to contribute

16

17  [142] Wash. Rev. Code § 7.48.130; *see also* Restatement (Second) of Torts § 821B (1979) ("A public nuisance is an unreasonable interference with *a right common to the general public.*" (emphasis added)).

18  [143] *State ex rel. Warner v. Hayes Inv. Corp.*, 13 Wash. 2d 306, 311, 125 P.2d 262, 264 (1942), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wash. 2d 682, 451 P.3d 694 (2019); *Miotke v. City of Spokane*, 101 Wash. 2d

19  307, 331, 678 P.2d 803, 817 (1984) ("The bypass affected the rights of all members of the community living along the shores of Long Lake.  It therefore comprised a public nuisance under RCW 7.48.130."), *abrogated on other*

20  *grounds by Blue Sky Advocates v. State*, 107 Wash. 2d 112, 727 P.2d 644 (1986).

21  [144] *State ex rel. Warner v. Hayes Inv. Corp.*, 13 Wash. 2d 306, 312, 125 P.2d 262, 264 (1942); *see Wood v. Mason County*, 174 Wash. App. 1018 (table), 2013 WL 1164437, at *9 (2013) (unpublished); *see also Wolfe v. State, Dep't of Transp.*, 4 Wash. App. 2d 1023 (table), 2018 WL 3026366, at *6 (2018) (unpublished) (rejecting public nuisance

22  claim against erection of bridge because "the evidence was insufficient to demonstrate that the erosion was impacting the community").

23  [145] *Crawford v. Cent. Steam Laundry*, 78 Wash. 355, 357, 139 P. 56, 57 (1914) ("It is not enough that the business sought to be enjoined is productive of inconvenience, or shocks the taste, or diminishes the value of property in the

24  vicinity, or causes a reduction in rentals.").

25  [146] Dunlop Decl., ¶¶ 5-12; Humphreys Decl., ¶¶ 6-12.

26  [147] Garrett Decl., ¶¶ 8-12; McEntire Decl., ¶¶ 8-10; Morgan Decl., ¶ 11 & Ex. J (Black Dep. at 77:15-78:18, 79:18-22, 81:4-12, 153:15-154:13, 155:16-156:5).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 20
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  to the economy and incredible landscape of Clallam County."[148]  Even ALDF's own "members"

2  praise Olympic Game Farm and its care and treatment of animals.[149]

3       ALDF's "evidence" of its public nuisance claim consists of statements made by a few

4  dissatisfied customers as well as hearsay statements made on the internet by unidentified persons

5  for whom there is no evidence that they ever visited Olympic Game Farm or live in Sequim (or

6  even Washington state).[150]  More than 125,000 visitors tour Olympic Game Farm annually.[151]

7  Olympic Game Farm receives positive reviews from the overwhelming majority of its visitors, is

8  ranked as one of the top activities on the Olympic Peninsula, and was named "Business of the

9  Month" by the Sequim Chamber of Commerce.[152]  That housing animals in captivity "shocks the

10  taste" of an extreme animal-rights activist is "not enough" to constitute a public nuisance.[153]

11       **2.**    ***ALDF Cannot Establish a Special Injury***

12       Although "any person whose property is, or whose patrons or employees are, injuriously

13  affected or whose personal enjoyment is lessened" may assert a nuisance claim,[154] a person may

14  assert a public nuisance claim only if the nuisance is also "specially injurious to himself or herself

15  but not otherwise."[155]  Thus, to assert a public nuisance claim, a person must establish an injury

16  distinct from that suffered by the public.[156]  If it cannot, the nuisance may only be abated by public

17  authorities.[157]

18

19  [148] Beebe Decl., ¶ 3 & Ex. A (Wash. S. Res. 8612 (adopted Jan. 20, 2011)).

20  [149] Teas Decl., ¶¶ 4-11.

    [150] *See, e.g.*, Morgan Decl., ¶ 6 & Ex. D (Walden Dep. at 117:7-12, 117:22-118:1, 149:1-13, 259:2-12).

21  [151] Beebe Decl., ¶ 5; Garrett Decl., ¶ 9; McEntire Dec., ¶ 8.

22  [152] Beebe Decl., ¶ 6 & Ex. B; Garrett Decl., ¶¶ 9-11; McEntire Dec., ¶ 8.

    [153] *Crawford*, 78 Wash. at 357, 139 P. at 57.

23  [154] Wash. Rev. Code § 7.48.020.

24  [155] Wash. Rev. Code § 7.48.210.

25  [156] *See, e.g., Sound Mind & Body, Inc. v. City of Seattle*, 122 Wash. App. 1074 (table), 2004 WL 1814330, at *2 (2004) (unpublished) (holding that plaintiff's alleged injuries were not different from those suffered by the general public).

26  [157] *Lampa v. Graham*, 179 Wash. 184, 187, 36 P.2d 543, 544 (1934).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 21
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   ALDF cannot establish that it has suffered a special injury.  In fact, ALDF's Complaint is

2   devoid of any injury that it allegedly suffered.[158]  That is not surprising since ALDF has no offices

3   in Washington and is not registered with the Secretary of State.[159]  Instead, ALDF alleges only

4   that the "public at large"—a phrase that its own corporate representative could not define—

5   suffered some unidentified harm "due to a lack of enforcement of laws."[160]  That is not a special

6   injury.  Further, Washington law does not recognize a private civil cause of action to enforce

7   animal-control laws or the State Fish and Wildlife Code.  Prosecution of violations of those

8   criminal statutes is left to WDFW and other public agencies.  Other courts have correctly rejected

9   attempts by ALDF and activist organizations seeking to appoint themselves the enforcers of animal

10   cruelty laws, finding that they did not suffer any injury greater than the general public and requiring

11   enforcement by public authorities, not through a private civil action.[161]  The same is true here.

12      **3.    *Olympic Game Farm Complies with Applicable Laws***

13   Even if ALDF could establish that Olympic Game Farm caused an injury to the entire

14   community and a special injury to itself (which it cannot), ALDF cannot demonstrate that Olympic

15   Game Farm is "unlawfully doing an act" that "annoys, injures or endangers the comfort, repose,

16   health or safety of others."[162]  Olympic Game Farm complies with all applicable laws.  It is

17   licensed by the USDA to exhibit animals, is in compliance with those regulations, and meets or

18   exceeds the standards in the AWA.[163]  Standards promulgated by the Association of Zoos &

19   Aquariums and other private membership organizations are admittedly not binding upon non-

20   ---

[158] *See generally* ECF No. 1 (Compl.).

21   [159] Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 65:12-16, 66:14-17, 68:4-9).

22   [160] *Id.* (Walden Dep. at 130:7-136:19).

23   [161] *See, e.g., Animal Legal Def. Fund v. Mendes*, 72 Cal. Rptr. 3d 553, 556-57 (Ct. App. 2008) (no private cause of action to enforce animal cruelty laws); *Pa. Soc'y for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 237 A.2d 342 (Pa. 1968) (plaintiff enjoyed no greater property right in prevention of animal cruelty and suffered no greater injury than the general public for violations of animal cruelty laws).

24

25   [162] Wash. Rev. Code § 7.48.120.

26   [163] Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 198:10-20, 215:8-11, 220:24-221:11); *see also id.*, ¶ 11 & Ex. J (Black Dep. at 77:15-78:18, 79:18-22, 81:4-12, 153:15-154:13, 155:16-156:5).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 22
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  members, and violation of those standards is not unlawful.[164]  Olympic Game Farm is not injuring

2  or endangering its neighbors or the Sequim community, and all of its animals are well cared for.[165]

3       ALDF's allegation that Olympic Game Farm has violated the Washington State

4  Endangered Species Act, Wash. Rev. Code § 77.15, is equally misguided.  That statute prohibits

5  the taking and possession of state-listed *wild* animals only; it does not apply to animals born in

6  captivity.[166]  WDFW "has no jurisdiction over facilities of this nature unless they were to house

7  wild animals that were taken from the wild in Washington."[167]  But ALDF does not have any

8  evidence that a state-listed wild animal was illegally taken or is possessed by Olympic Game Farm.

9  That is because all of the state-listed species at Olympic Game Farm were captive born.[168]

10      Lastly, ALDF argues that Olympic Game Farm violated Wash. Admin. Code 220-450-030,

11  regarding the possession of Roosevelt elk.  But that provision does not apply to Olympic Game

12  Farm because none of its elk were taken from the wild in Washington.[169]  That result is not

13  surprising since these regulations were not intended to apply to animal exhibitors, but rather were

14  targeted at farms importing elk, deer, and other wildlife for food or sport hunting to prevent disease

15  transmission and mixing of the animals with native, wild animals.[170]  To be sure, the same year

16  that WDFW issued those regulations, it granted Olympic Game Farm a license to exhibit elk.[171]

17

18

19  [164] Briggs Decl., ¶ 2; *see also* Morgan Decl., ¶ 13 & Ex. L (Harrenstien Dep. at 29:14-19, 30:12-31:14).

20  [165] Garrett Decl., ¶¶ 7-12; McEntire Decl., ¶¶ 6-10; Dunlop Decl., ¶¶ 6-12 ; Humphreys Decl., ¶¶ 6-12; Teas Decl., ¶¶ 5-8, 11; Morgan Decl., ¶ 5 & Ex. D (Forbes Dep. at 198:13-20, 220:24-221:11); Briggs Decl., ¶¶ 5-13 & Ex. B.

21  [166] Wash. Rev. Code § 77.15.120; *see also* Wash. Admin. Code 220-610-110 ("The purpose of this rule is to identify
22  and classify native wildlife species that have need of protection and/or management to ensure their survival as free-ranging populations in Washington.").

23  [167] Morgan Decl., ¶ 12 & Ex. K.

    [168] Beebe Decl., ¶ 28.

24  [169] Morgan Decl., ¶ 12 & Ex. K (providing WDFW has "no jurisdiction over facilities … unless they were to house
    wild animals that were taken from the wild in Washington"); *see also* Beebe Decl., ¶¶ 28-29.

25  [170] *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1011 (9th Cir. 1994).

26  [171] Beebe Decl., ¶ 29 & Ex. O.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 23
(3:18-cv-06025-RSL)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    But even if those regulations somehow applied to Olympic Game Farm, any violation of

2    those regulations does not constitute a public nuisance.  Olympic Game Farm is not importing elk

3    and, thus, there is no risk of importing diseases.[172]  In fact, there is no evidence of any disease

4    transmission at Olympic Game Farm.[173]  Nor is there any evidence that an elk has ever escaped

5    from Olympic Game Farm, which is secured by a USDA mandated eight-foot-high double

6    perimeter fence.[174]  There is no credible public risk of injury from Olympic Game Farm's

7    possession of Roosevelt elk, and thus no basis for a public nuisance action.  And if there were a

8    violation (and there is not), it is thus up to WDFW, not ALDF, to enforce its own regulations.

9                                    **VI.  CONCLUSION**

10    For the foregoing reasons, the Court should enter summary judgment dismissing ALDF's

11    claims for violation of the ESA and public nuisance as a matter of law.

12    DATED:  March 18, 2020              STOEL RIVES LLP

13

14                                         /s/ Aric H. Jarrett
                                          Jason T. Morgan, WSBA No. 38346
15                                         Aric H. Jarrett, WSBA No. 39556
                                          James C. Feldman, WSBA No. 51271
16                                         Rachel D. Groshong, WSBA No. 47021
                                          600 University Street, Suite 3600
17                                         Seattle, WA  98101
                                          Telephone:  206.386.7527
18                                         Email: jason.morgan@stoel.com
                                                 aric.jarrett@stoel.com
19                                                james.feldman@stoel.com
                                                 rachel.groshong@stoel.com
20

21                                         Attorneys for Defendants

22

23

---

24    [172] Beebe Decl., ¶¶ 29-30.

25    [173] *Id.*, ¶ 30; *see also* Morgan Decl., ¶ 6 & Ex. E (Walden Dep. at 202:1-7).

      [174] Beebe Decl., ¶ 30.  In fact, WDFW has sent Sika deer and black-tailed deer to Olympic Game Farm precisely
26    because of its secure fencing and low probability of escape.  *Id.*, ¶¶ 30-31 & Exs. P, Q.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24
(3:18-cv-06025-RSL)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*