UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPIC GAME FARM, INC., *et al.*,<br><br>Defendants. | Cause No. C18-6025RSL<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION AND CERTIFYING QUESTION |

This matter comes before the Court on plaintiff's motion for reconsideration of the Court's summary judgment orders (Dkt. # 228 and # 229). Motions for reconsideration are disfavored in this district and will be granted only upon a "showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h)(1). Plaintiff argues that the Court manifestly erred when it (a) failed to make an explicit finding that plaintiff has standing to pursue both declaratory and injunctive relief in this action, (b) failed to grant summary judgment on its federal Endangered Species Act ("ESA") claim with respect to the Canada lynx, (c) failed to determine whether the definition of "harass" for captive wildlife includes a likelihood-of-injury element and to apply the element when resolving the motions for summary judgment,

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 1

(d) placed the burden on plaintiff to show that defendants had harassed captive wildlife, and (e) restricted a public nuisance claim under Washington law to conduct that is specifically enumerated in statute, that interferes with the use and enjoyment of property, or that creates a public hazard. It requests that the Court reconsider these aspects of the summary judgment orders or, in the alternative, certify the public nuisance question to the Washington Supreme Court pursuant to RCW 2.60.020.

### A. Standing

In its summary judgment motion, plaintiff requested a determination that it has Article III standing to pursue claims under the ESA. Dkt. # 160 at 33-36. Its evidence of member harm was uncontradicted, and its assertions regarding its organizational purpose and ability to proceed without the participation of individual members were unchallenged. Under the Rule 56 framework, plaintiff is entitled to a finding that it has standing to pursue declaratory and injunctive relief under the ESA. *See* Fed. R. Civ. P. 56(a) ("court shall grant summary judgment..."); *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 985 (9th Cir. 1994) (details of remedy go to merits, not standing). The motion for reconsideration is GRANTED on this point.

### B. ESA Violation with Respect to the Canada Lynx

In support of its public nuisance claim, plaintiff asserted that the Canada lynx is an endangered species under Washington's ESA, that defendants possess a Canada lynx, that defendants have violated Washington's prohibition against taking Canada lynx, and that the state law violation "also amounts to a violation of the federal ESA." Dkt. # 160 at 28 n.22. It

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 2

now argues that the Court manifestly erred in failing to rule on "its summary judgment argument that [Olympic Game Farm] is violating the [federal] ESA as to captive-bred Canada lynx Purrsia via its ongoing violation of Washington's Endangered Species Act . . . ." Dkt. # 230 at 2.

In its motion for summary judgment, plaintiff expressly sought a summary determination that defendants had violated the federal ESA as to "just two species, tiger and grizzly bear . . . ." Dkt. 160 at 6. It cannot now, in a motion for reconsideration, seek a summary determination with regards to the Canada lynx.[1]

**C. Scope of the "Harass" Exceptions**

The term "harass," as used in the federal ESA, is defined to mean:

> an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering. This definition, when applied to captive wildlife, does not include generally accepted:
>
> > (1) Animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act,

---

[1] Even if the Court were to consider this argument on the merits, it is not clear that possession of an animal that was born, raised, and held in captivity (and otherwise lawfully obtained) constitutes a "taking" of "wildlife" for purposes of RCW 77.15.120 and RCW 77.08.010(62). When faced with similar issues, the federal agency in charge of enforcing the ESA determined that the protections afforded by the statute vary depending on whether an animal is held in captivity or is in the wild. *See* Dkt. # 228 at 13-14. The state law definitions and regulations are inconclusive, but there is evidence that the state agency does not believe the state ESA applies to animals housed at Olympic Game Farm. *See* Dkt. # 131 at 190 (January 19, 2018, Letter from Washington's Department of Fish and Wildlife to the U.S. Department of Agriculture stating, "The advice that I have received is that the Washington Department of Fish and Wildlife has no jurisdiction over facilities of this nature unless they were to house wild animals that were taken from the wild in Washington.").

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 3

>       (2) Breeding procedures, or
>
>       (3) Provisions of veterinary care for confining, tranquilizing, or anesthetizing, when such practices, procedures, or provisions are not likely to result in injury to the wildlife.

50 C.F.R. § 17.3. In the context of the summary judgment motions, plaintiff asserted that in order to avoid a finding of harassment under subsection (1), the animal husbandry practice must be "generally accepted," must "meet or exceed the minimum standards for facilities and care under the Animal Welfare Act," and must not be "likely to result in injury to the wildlife." Dkt. # 160 at 8 (quoting 50 C.F.R. § 17.3). In making this argument, plaintiff reformatted the regulation into a block quote, obscuring the fact that the "likely to result in injury" element is imbedded in the third subsection and failing to squarely address its applicability to the first and second subsections. Without assistance and argument from the parties regarding principles of regulatory interpretation, the Court declined to determine whether likelihood of injury had to be considered when determining whether an animal husbandry practice constitutes harassment. Two aspects of plaintiff's ESA claim (*i.e.*, those related to the characteristics of the tiger and lion enclosures) were dismissed without considering whether the characteristics were "likely to result in injury" to the animals. Plaintiff argues that it was error to dismiss any aspect of the ESA claim pursuant to the definition of harassment without first determining all of its elements. The Court agrees.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 4

Nevertheless, the outcome remains the same. Regardless whether the harassment analysis for captive wildlife involves two or three elements, plaintiff's federal ESA claim regarding the tiger and lion enclosures was properly dismissed. Plaintiff fails to identify any evidence in the record that could support a finding that the big cats' housing was likely to result in injury. Plaintiff asserts that the Court ignored evidence that the lion and tiger enclosures "are likely to (and often do) result in injury" and "that tigers' enclosures likely cause stress, adrenal exhaustion, and immunosuppression." Dkt. # 230 at 4. The first quotation merely repeats an argument made in the motion for summary judgment, with a citation to the regulatory definition of "harassment." Dkt. # 160 at 6. It is not evidence. The second quotation relies on the declarations of Dr. Lisa Harrenstien, plaintiff's expert veterinarian, but those declarations simply state that stark enclosures create stress in big cats, which places the animal "much more at risk for development of disease from infectious agents." Dkt. # 159 at ¶ 17; Dkt. # 195 at ¶ 8. They do not state that such injury occurred or is likely. Nor do they identify any likely injury that is causally related to a lion's exposure to temperatures below 50 degrees Fahrenheit. The dismissal of the federal ESA claim based on the inadequacy of the tiger and lion enclosures was not manifest error.

**D. Burden of Proof Regarding "Harass" Exceptions**

The Court, citing cases involving the ESA's definition of "harass," found that it is plaintiff's burden to show that harassment occurred. Dkt. # 228 at 18; Dkt. # 229 at 10. *See also*

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 5

*Animal Legal Def. Fund v. Lucas*, No. CV 2:19-40, 2022 WL 972432, at *10 (W.D. Pa. Mar. 31, 2022). Although the definition of "harass" – and therefore what plaintiff has to show in order to succeed on its claim -- changes depending on whether the subject animal is in the wild or in captivity, that does not shift the burden of proof to defendants. Plaintiff simply disagrees with the Court's resolution of the issue and has not shown manifest error.

**E. Public Nuisance**

The Court dismissed plaintiff's public nuisance claim on the ground that identifying conduct that violates a statute or regulation does not convert the infraction into a public nuisance absent a showing of express legislative intent, a showing that the conduct interferes with plaintiff's use and enjoyment of property, or a showing that the conduct is injurious to public health or safety. Plaintiff disagrees, citing for the first time "more than a century of Washington law deeming activities that threaten state wildlife to be public nuisances." Dkt. # 230 at 6. Plaintiff asserts that it "did not present these arguments to the Court on summary judgment because it believed Judge Leighton's orders resolved the issue and [defendant's] summary judgment briefing did not ask the Court to revisit the matter." Dkt. # 230 at 5 n.7. Neither assertion is accurate. In seeking summary judgment on its public nuisance claim, plaintiff offered a number of out-of-state cases in support of the proposition that a violation of animal welfare statutes constitutes a public nuisance: it clearly did not believe that Judge Leighton had conclusively decided the matter. Defendants, for their part, affirmatively argued that whatever

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 6

their statutory compliance issues, their conduct did not adversely impact their neighbors or community and was not, therefore, a public nuisance. Dkt. # 126 at 25-27.

The Court has already found, and hereby restates, that simply conducting a business in violation of governing laws and regulations or violating animal protection statutes do not constitute a public nuisance per se under Washington law. Rather, plaintiff must show that the conduct at issue adversely impacts land, the use and enjoyment of property, or public health and safety in order to hold defendants liable for a public nuisance. The Court reiterates that "[p]laintiff has accused defendants of serious statutory violations, but they are entirely unrelated to plaintiff's use and enjoyment of property or to public health or safety. Absent some injury that falls within Washington's nuisance laws, the public nuisance claim fails." Dkt. # 228 at 28. Nevertheless, the Court agrees with plaintiff that the essential elements of a public nuisance claim should be determined by the courts of Washington State, rather than by the federal courts. It is not out of the realm of possibility that the State's highest court could, as a matter of public policy, equate a violation of the state ESA or an animal cruelty statute with an injury to public morals that gives rise to a public nuisance. The Court will therefore certify this issue.

For all of the foregoing reasons, plaintiff's motion for reconsideration is GRANTED in part and DENIED in part. Plaintiff is entitled to a declaration that it has standing to pursue its federal ESA claims, and the following question is hereby certified to the Supreme Court of Washington:

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 7

> Does a violation of Washington's wildlife laws, animal cruelty laws, and/or Endangered Species Act establish a claim for public nuisance in the absence of a showing that the conduct was legislatively declared a public nuisance, interferes with the use and enjoyment of property, or is injurious to public health or safety?

The Clerk of Court is directed to submit to the Supreme Court of Washington certified copies of this Order, a copy of the docket in the above-captioned matter, and Dkt. # 1, 126-36, 148-56, 159-60, 189-90, 192, 194-95, 198-99, 202-05, 207, 210-11, 216, 228-31, 236-40. The record so compiled contains all matters in the pending cause deemed material for consideration of the state law questions certified for answer.

The plaintiff in this action is designated as the appellant before the Supreme Court of Washington. The Clerk of Court shall notify the parties as soon as possible, but no more than three days, after the above-described record is filed in the Supreme Court of Washington. The parties are referred to state RAP 16.16 for additional information regarding procedure before the Supreme Court.

Dated this 6th day of September, 2022.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR RECONSIDERATION AND
CERTIFYING QUESTION - 8