HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OLYMPIC GAME FARM, INC., ROBERT ) <br> BEEBE, JAMES BEEBE, and KENNETH ) <br> BEEBE, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 3:18-cv-06025-RSL <br><br> PLAINTIFF'S RE-FILED MOTION TO CONSOLIDATE <br><br> Note on Motion Calendar: February 10, 2023 |

### I.   MOTION

Pursuant to Federal Rule of Civil Procedure 42, Plaintiff Animal Legal Defense Fund ("ALDF") respectfully moves the Court for an order consolidating this case ("*ALDF I*") with *ALDF v. Olympic Game Farm, Inc., et al.*, Case No. 3:22-cv-05774-RSL ("*ALDF II*").

### II.   INTRODUCTION

*ALDF II* alleges that OGF is violating the Endangered Species Act ("ESA") by keeping grizzly bears in enclosures that are infested with cheatgrass, a plant with a barbed awn that has repeatedly caused persistent, deeply infected wounds to OGF's grizzlies. *ALDF II*, Dkt. 21. Consolidating *ALDF II* with this case would add a narrow claim alleging a specific condition at OGF illegally "takes" grizzly bears to a case that already contains a claim that OGF "takes" those same bears by other means. *See id.*; *ALDF I*, Dkts. 1 & 228 at 23, 30. Furthermore, the parties

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 1

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

already conducted discovery, developed expert testimony, and argued for and against summary judgment on the merits on the additional claim within this case. *See, e.g., ALDF I,* Dkts. 160 at 15–19; 202 at 15–17; 210 at 10–11. Consolidation will save the Court, parties, and non-party witnesses time, money, and effort.

Despite the obvious efficiencies, OGF opposes consolidation for two misplaced reasons: the two cases are at different procedural phases and OGF wants to conduct more discovery on ALDF's standing and ALDF's "allegations related to cheatgrass." *See ALDF II,* Dkt. 14 at 2, 4. These concerns are misplaced because, while the two cases are at nominally different stages, supplemental discovery and trial in *ALDF I* is likely to proceed on a very similar schedule to the remaining discovery and trial scheduled in *ALDF II. See* § III.A., *infra.* Moreover, ALDF's standing was already established for claims regarding these same bears in *ALDF I,* and OGF already has ample fact and expert discovery on cheatgrass, including both parties' experts' opinion testimony on the alleged ESA violation. *See* §§ III. B & C, *infra.* Any supplemental discovery will be narrow and can be easily and efficiently accommodated within *ALDF I*.

### III.   PERTINENT FACTS

**A. Trial in both cases is approximately one year away.**

While this case was filed in late 2018, trial has been delayed multiple times for a variety of reasons. Most recently the Court struck the trial date pending the Washington Supreme Court's determination of a question of state law certified to it by this Court. Dkts. 252 & 253.  The parties' briefing in the Supreme Court will be complete by January 31, 2023, but oral argument has not been scheduled yet. Tonry Decl., ¶ 2. The Supreme Court's winter oral argument calendar is full so the case will likely be heard on the spring calendar which begins in May 2023. *Id.* On average in recent years, the Washington Supreme Court has decided certified questions three months after oral argument, suggesting that if the Supreme Court holds oral argument in the spring calendar, the court will issue decision in this case in late summer or early fall next year. *Id.* After the Supreme Court rules, this Court will have to schedule trial, the parties will need to supplement discovery responses with any new factual developments, expert reports may need to be supplemented

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 2

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

depending on new facts, ALDF will conduct a site visit of OGF per the Court's order, and the parties will need to complete pretrial disclosures, briefs, and a trial order. *Id.* at ¶ 3; Dkt. 257 at 3. Based on this, ALDF anticipates trial would be set in early 2024. Tonry Decl., ¶ 3.

The case schedule in *ALDF II* follows a similar calendar: expert reports are due August 9, 2023; discovery closes October 8, 2023; dispositive motions are due November 7, 2023; and a three-day bench trial is set to start February 5, 2024. *ALDF II,* Dkt. 15.

**B. Discovery and expert work in this case covered cheatgrass**.

In this case, document discovery, depositions, and both sides' experts addressed cheatgrass wounds and treatment for grizzlies at OGF. Tonry Decl., ¶ 4 (summarizing relevant document production).

OGF's attending veterinarian, Dr. Heather Short, discussed three different ESA-protected animals' cheatgrass (aka foxtail) wounds during her November 26, 2019 deposition: the lynx Purrsia and the grizzly bears Good Momma and Samantha. Ex. A (Short Dep.) at 95:4–96:20; 99:4–100:4; 101:2–8 (lynx); 172:19–174:19 (grizzlies).

ALDF questioned OGF inspector Dr. Diane Forbes about cheatgrass at OGF during her December 16, 2019 deposition, though Dr. Forbes did not know what cheatgrass, foxtail, or grass awns were. Ex. B (Forbes Dep.) at 155:19–24. (Curiously, in his April 2021 declaration, Robert Beebe testified that he discussed the cheatgrass issues with Forbes in the summer of 2019, no more than 90 days before Forbes's deposition. Dkt. 204 ¶ 58.)

OGF's other attending veterinarian, Dr. Tara Black, discussed cheatgrass wounds, cheatgrass control measures, and her advice to OGF about cheatgrass in her December 18, 2019 deposition. Ex. C (Black Dep.) 52:12–53:19; 60:25–61:9; 142:3–12; 156. Dr. Black's deposition concludes with her identifying cheatgrass wounds as one of two examples of concerns she has that need to be addressed. *Id.* at 156 ("I mean as far as concerns go that I have addressed, like a cheatgrass abscess or pacing in Coda, I mean those are like separate notes that I've made of something that, yeah, it's concerning, let's address that.")

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 3

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

OGF's Rule 30(b)(6) designee, defendant Robert Beebe, discussed cheatgrass wounds and cheatgrass control measures for the lynx and bears' enclosures during his January 27, 2020 deposition. Ex. D (OGF Dep.) 47:8–50:7; 112:25–119:21. OGF's testimony is that "you never totally get rid of cheatgrass," even with plowing and reseeding, which OGF did in response to a "large infestation" of cheatgrass in the bears' enclosure. *Id.* at 48:23–49:22.

In his December 14, 2020 deposition, OGF's head of animal care, Eugene Pate, testified at length about cheatgrass wounds suffered by OGF grizzlies and cheatgrass control. Ex. E (Pate Dep.) 128:4–145:25; 169:8–170:9. Similarly, in a February 12, 2021 deposition, OGF's longtime former head of animal care, Clay Richmond, testified about the lengthy presence of cheatgrass (which he referred to as foxtail) at OGF and its effects on a number of different animals. Ex. H (Richmond Dep.) 107:2-109:2, 179:11-183:4.

In her December 15, 2020 report, ALDF's expert Dr. Lisa Harrenstien discussed recently received veterinary records and information about grizzly bear Samantha's recurring infected cheatgrass wounds. Tonry Decl., Ex. 1. Dr. Harrenstien disclosed her opinions that (1) Samantha was not given appropriate medication for the type of infection she had; (2) "[i]f OGF staff and veterinarians were working with the theory that recurrent grass awn penetration of forelimb skin was the cause for the repeated infections and large wounds . . . then frequent mowing of the animal's enclosure should have been done, or the animal should have been permanently moved to an enclosure with more intensive grass maintenance, knowing that this would reduce the likelihood of painful recurrent wounds and infections," but OGF failed to take these steps; (3) Samantha's wounds were "ulcerated, undoubtedly painful" and involved large areas of tissue which is "quite severe"; and (4) "A well-managed zoo would not allow for 4 separate episodes of significant wounds to occur within just one year, and would institute broad changes in housing and management to prevent animal suffering. OGF's lack of action to do so constitutes negligence, certainly within the realm of situations which would prompt a USDA investigation and USDA directives for changes to be made." *Id.* Dr. Harrenstien's December 15, 2020 report was an exhibit in her February 8, 2021 deposition in this matter. *Id.* at ¶ 6.

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 4

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

In his January 19, 2021 report, OGF's expert Dr. Michael Briggs discusses Samantha's cheatgrass wounds beginning in 2019 and continuing through April 2020 and opines on OGF's responses to these wounds in terms of veterinary care, housing Samantha in "a location near the black bears (without grass)" for months, and OGF's cheatgrass control attempts. Tonry Decl., Ex. 2 at 13. In his deposition a week later (January 27, 2021), Dr. Briggs clarified that this "location" was a small travel trailer. Ex. F (Briggs Dep.) 127:18–128:23.

During his deposition, Dr. Briggs also explained that a "common bane of being around" cheatgrass is that an animal will get "fairly infected" lesions and require immobilization and treatment because the plant's seeds are "very, very migratory once they get into the flesh." *Id.* at 128:11-23.

In his February 23, 2021 deposition, defendant James Beebe testified about grass management in the bear enclosures in 2016 and 2020, Samantha's cheatgrass wounds and related confinement of Samantha to a trailer, the location and extent of cheatgrass at OGF in 2020 and 2021, and cheatgrass concerns generally. Ex. G (J. Beebe Dep.) at 55:8–57:11; 103:9–107:5; 109:4–113:24; 229:20–231:15; 237:20–238:1. This testimony included answering seven substantive questions from defendants' counsel about cheatgrass, including two ALDF objected to as leading. *Id.* at 229:20–231:15.

Dr. Briggs's April 2021 declaration in this matter provides his opinions in response to ALDF's assertion that cheatgrass renders OGF's bear enclosure unsafe and that OGF fails to adequately respond to cheatgrass and the bears' cheatgrass wounds. Dkt. 205 at ¶¶ 24–27. Dr. Briggs's opinion is clearly tailored to the legal standards for illegal harassment of captive species under ESA regulations in that he references the Animal Welfare Act multiple times as well as "industry-standard and generally accepted practices." *Id.* at ¶¶ 26–27; 50 C.F.R. § 17.3.

In Robert Beebe's April 2021 declaration, which "specifically addresses" ALDF's motion for summary judgment, Beebe gives his account of Good Momma's and Samantha's cheatgrass wounds and OGF's responses and cheatgrass control practices. Dkt. 204 at ¶¶55–68; *see also* Dkt.

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 5

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

160 at 16 (ALDF's motion for summary judgment, which concerns grizzly bear-cheatgrass issues in the context of the ESA claim only).

### C. Discovery and summary judgment in this case covered ALDF's standing.

ALDF's March 3, 2019 initial disclosures in this case identified several ALDF members with standing including Michelle Andrews, Scott and Carol McGee, and Carolyn and Tom Long. Tonry Decl., ¶ 8. On July 3, 2019, ALDF responded to OGF's interrogatories and requests for production regarding ALDF's members who visited OGF; ALDF's responses identified Pamela Bumgardner in addition to Andrews, the McGees, and the Longs. *Id.,* ¶ 9 (March 9, 2020 supplemental initial disclosures also identified Bumgardner). ALDF's discovery responses included narrative explanations of its basis for standing, including representative standing based on its members' experiences. *Id.,* at ¶ 10. In addition, on March 19, 2020, Andrews, the McGees, the Longs, and Bumgardner each responded to OGF's subpoenas duces tecum requesting nineteen categories of documents. *Id.,* at ¶ 11.

Discovery closed April 6, 2020, Dkt. 52, but the deadline for depositions was extended to May 15, 2020, and then to February 19, 2021, Dkt. 120.

On November 16, 2020, OGF deposed ALDF's Rule 30(b)(6) designee; one of the topics in the deposition notice was "The basis for and all facts and allegations related to ALDF's standing to commence, prosecute, and maintain this lawsuit." Tonry Decl., ¶ 12. OGF never sought to depose any of ALDF's members. *Id.* at ¶ 13.

Over two years after ALDF's initial disclosure of these witnesses, and after the completion of fact discovery, ALDF moved for summary judgment on its standing relying on the Andrews, McGee, and Bumgardner declarations. Dkt. 160 at 31–32. By the time ALDF moved for summary judgment, two grizzly bears afflicted with cheatgrass wounds in 2019 and 2020 had died. *Id.* at 17. In its April 26, 2021 opposition brief, OGF's discussion of standing under the ESA was limited to a footnote arguing that ALDF's members' injuries were "dubious" and redressability "speculative." Dkt. 202 at 8, n. 52. OGF did not argue it needed additional discovery to respond

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 6

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

to ALDF's motion to establish standing as a matter of law. *See generally* Dkt. 202. In its March 8, 2022 order on ALDF's motion, the Court responded to OGF's arguments on standing and remedy:

> Defendants argue that a request for a determination that defendants' past conduct violated the ESA falls outside the citizen suit provision because plaintiff has not attempted to show that injunctive relief - the only relief available under the statute - is appropriate. A party may, however, move for summary judgment regarding a part of a claim. Fed. R. Civ. P. 56(a). Thus, a motion seeking to establish that defendants are "in violation" of the ESA is permissible even if the remedy remains to be determined. Nor is plaintiff seeking relief for wholly past violations. Plaintiff asserts that defendants have handled and cared for their tigers and grizzlies in essentially the same way over the past five or six years, including after this lawsuit was filed, and that their conduct constitutes "taking" under the ESA. In these circumstances, a determination that defendants' past conduct harmed or harassed protected animals may justify injunctive relief aimed at curbing similar and on-going conduct in the future.[5]
>
> …
>
> [5] In a footnote, defendants assert that plaintiff's separation of an ESA violation from the appropriate remedy "precludes any analysis of standing under the ESA." Dkt. # 206 at 10 n.52. They do not explain why that is: standing can be raised and argued at the remedy stage. In addition, defendants improperly ignore or discount the nature of the injuries claimed by plaintiff's members without any competing evidence.

Dkt. 229 at 6. ALDF then moved for reconsideration to clarify the Court's holding on ALDF's standing. Dkt. 230 at 2. At the Court's invitation, OGF responded only to say that "nothing precludes" the Court from waiting until trial to address standing. Dkt. 236 at 1. OGF did not argue that it lacked sufficient discovery on ALDF's standing as to the claim that OGF was in violation of the ESA as to the grizzly bears. *See id.* The Court granted ALDF's motion for reconsideration on standing to sue for forward-looking injunctive relief under the ESA, holding:

> In its summary judgment motion, plaintiff requested a determination that it has Article III standing to pursue claims under the ESA. Dkt. # 160 at 33-36. Its evidence of member harm was uncontradicted, and its assertions regarding its organizational purpose and ability to proceed without the participation of individual members were unchallenged. Under the Rule 56 framework, plaintiff is entitled to a finding that it has standing to pursue declaratory and injunctive relief under the ESA. *See* Fed. R. Civ. P. 56(a) ("court shall grant summary judgment..."); *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 985 (9th Cir. 1994) (details of remedy go to merits, not standing).

Dkt. 253 at 2.

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 7

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## IV.   ARGUMENT

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: join for hearing or trial any or all matters at issue in the actions; consolidate the actions; or issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Under this rule, district courts have broad discretion to consolidate cases pending in the same district. *Invs. Res. Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). In determining whether to consolidate cases, courts "weigh[] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. U.S.*, 743 F.2d 703, 704 (9th Cir. 1984).

### A.   The Two Actions Involve Common Questions of Law and Fact.

Both actions involve the same parties, the same grizzly bears, and the same roadside zoo. *ALDF I,* Dkt. 1; *ALDF II,* Dkt. 21. Both actions allege OGF is taking grizzly bears in violation of the ESA. *Id.* Although the conditions alleged to constitute "take" are distinct, the two suits share several common questions including:

(1) Are OGF bears Good Momma, Samantha, Lillie, Fee, Fie, Fum, Donald, and Moxie, ESA-protected grizzlies? The Court already ruled in ALDF's favor on this issue in *ALDF I,* Dkts. 228 at 7 & 254 at 5, but OGF continues to refer to these bears as "brown bears" in *ALDF II,* signifying it continues to dispute their subspecies and protected status. *See ALDF II,* Dkt. 12 at 2.

(2) Does ALDF have standing to sue for alleged "take" of OGF's bears, including Lillie, Fee, Fie, Fum, Donald, and Moxie? In September, 2022, the Court ruled in ALDF's favor on this issue in *ALDF I,* Dkts 229 at 6 & 253 at 2, but OGF disputes ALDF's standing as to these same bears in *ALDF II,* and seeks to relitigate the issue. *See ALDF II,* Dkt. 14 at 4 (OGF seeks discovery on standing).

(3) What are the precise contours of the legal standard for proving "harassment" of ESA-protected captive animals, including grizzly bears? The Court ruled on this issue in

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 8

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

*ALDF I*, partially in ALDF's favor and partially in OGF's favor. *See, e.g. ALDF I*, Dkts. 229 at 9–10 & 253 at 3–6.

(4) Are ALDF's and OGF's proffered expert witnesses on captive grizzly bears, including Dr. Lisa Harrenstein and Dr. Jennifer Ward (for ALDF) and Dr. Michael Briggs (for OGF), qualified and is their testimony admissible? The parties filed *Daubert* motions on these questions in *ALDF I* in March 2021, which the Court has not yet resolved. Dkts. 142, 145.

Since both cases involve common questions of law and fact, the two cases should be consolidated. *See, e.g. Gray v. Suttle & Assocs.; Midland Funding LLC*, Nos. CV-09-251-EFS, CV-10-5132-EFS, 2010 WL 11437034, at *2 (E.D. Wash. Dec. 29, 2010) (consolidating case "in its infancy" with case that had nearly completed discovery with fully brief summary judgment motions because there were common questions of law and fact and because both cases required the same witnesses).

### B.  Consolidation Will Promote Judicial Economy and Reduce Inconvenience, Delay, and Expense.

"[C]ases at different stages of litigation are routinely consolidated." *Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC*, 208 F.R.D. 59, 62 (S.D.N.Y. 2002). Indeed, where, as here, "the discovery and trial preparation necessary for the [second filed suit] will overlap significantly with the work already completed for the [first filed suit] . . . [t]he efficiency achieved by consolidation will far outweigh any inconvenience that may result therefrom." *Fields v. Provident Life & Accident Ins. Co.*, No. 99–CV–4261, 2001 WL 818353, at *6 (E.D. Pa. July 10, 2010) (consolidating a case that was "close to trial" with another in its "preliminary stages"); *see also Tidwell v. Homeland Carriers, Inc.*, Nos. 3:09-CV-762-WKW, 3:10-CV-43-WC, 2010 WL 1294135, at *1 (M.D. Ala. Mar. 30, 2010) (consolidating cases and finding "there is little reason why the discovery already taken in the first-filed suit would not be supplemented as necessary and form a large part of the discovery for the second-filed suit."); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1212 (S.D.N.Y. 1992) (consolidating cases at different stages because

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 9

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

"Discovery in [the first] case is certainly applicable to discovery in this case. . . . If additional discovery is needed in this case, the parties should be able to accomplish it without undue delay."); *Harrell v. Tutt, Taylor & Rankin Real Estate LLC*, No. 1:20-cv-1347, 2020 WL 9348161, at *3 (E.D. Va. Dec. 9, 2020) (same); *Spigen Korea Co., Ltd. v. Ultraproof, Inc.*, Nos. CV 17–1161–DOC, CV 16–1985–DOC, 2017 WL 5508664, at *2 (C.D. Cal. Oct. 20, 2017) (same).

Consolidating *ALDF I* and *II* will add a narrow claim for which the parties already conducted discovery, developed expert testimony, and argued for and against summary judgment. *See* § III. B, *supra*; *ALDF I,* Dkts. 160 at 15–19; 202 at 15–17; 210 at 10–11. Any necessary supplemental discovery or motions practice over the cheatgrass claim will necessarily be narrow because the Court already decided several preliminary issues such as the grizzly bears' protected status and ALDF's standing, and the adequacy of the pre-suit notice letter is no longer in dispute. *See ALDF I,* Dkts. 228 at 7 & 254 at 5 (protected status); Dkts. 229 at 6 & 253 at 2 (standing). In addition, OGF has unfettered access to the facts related to cheatgrass at its own facility and cheatgrass wounds to the animals there, so it does not need discovery to understand how the facts on the ground may have changed since discovery closed in *ALDF I*. Any necessary supplemental discovery and motions practice can readily be accommodated in *ALDF I* because trial in *ALDF I* is not yet scheduled and is very unlikely to occur for a year, which is on par with the schedule OGF requested and the Court ordered in *ALDF II*. Tonry Decl., ¶¶ 2–3; *ALDF II,* Dkt. 14 (Joint Status Report); Dkt. 15 (Order Setting Trial Date). Also, regardless of what happens with *ALDF II,* OGF will need to supplement its discovery responses with records related to the grizzly bears as part of trial preparation in *ALDF I*. Tonry Decl., ¶ 3.

On the other hand, if the cases are not consolidated, both parties can begin discovery anew. *ALDF II,* Dkt. 15. Disputes over duplicative discovery, protective orders, and res judicata are likely to proliferate. *See ALDF II,* Dkt. 14; § IV.A, *supra* (listing issues decided in *ALDF I* which OGF seeks to relitigate). Trial preparation will undoubtedly require duplication across the two cases. Tonry Decl., ¶ 14. Setting two trials with many of the same witnesses will waste Court resources

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 10

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

and unnecessarily burden witnesses with two separate appearances. In sum, consolidation will reduce rather than add inconvenience.

## V.  CONCLUSION

For the foregoing reasons ALDF respectfully requests the Court consolidate *ALDF II* with this case.

RESPECTFULLY SUBMITTED this 26th day of January, 2023.

SMITH & LOWNEY, PLLC

By: *s/Claire Tonry*
Claire E. Tonry, WSBA No. 44497
Attorneys for Plaintiff
2317 E. John St.
Seattle, WA 98112
Tel: (206) 860-2124; Fax: (206) 860-4187
E-mail: claire@smithandlowney.com

ANIMAL LEGAL DEFENSE FUND

Daniel H. Waltz, WSBA No. 45708
Animal Legal Defense Fund
The Yard, 700 Pennsylvania Ave SE
Washington, DC 20003
Email: dwaltz@aldf.org

Cristina Kladis, *admitted pro hac vice*
Animal Legal Defense Fund
525 E. Cotati Ave., Cotati, CA 94931
Tel: (707) 795-2533; Fax (707) 795-7280
Email: ckladis@aldf.org

PLAINTIFF'S MOTION TO CONSOLIDATE
Case No. 3:18-cv-06025-RSL
- 11

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883