UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANIMAL LEGAL DEFENSE FUND,

        Plaintiff,

    v.

OLYMPIC GAME FARM, INC., *et al*.,

        Defendants.

CASE NO. 3:18-cv-06025-RSL

ORDER REGARDING PLAINTIFF'S *DAUBERT* MOTION

This matter comes before the Court on "Plaintiff's *Daubert* Motion." Dkt. # 158. Plaintiff seeks to exclude the testimony of Dr. Michael Briggs, a veterinarian, on relevance and/or *Daubert* grounds.[1] In particular, plaintiff objects to Dr. Briggs's testimony regarding:

- the pervasiveness of USDA citations for violations of the Animal Welfare Act ("AWA");
- the interpretation of necropsy tissue samples taken from Olympic Game Farm animals;
- the adequacy of defendants' animal care and veterinarian expenditures;

---

[1] Defendants no longer intend to present the opinions or testimony of Dr. Ellie Armstrong, and the Court has therefore not considered plaintiff's objections thereto. *See* Dkt. # 274.

ORDER REGARDING PLAINTIFF'S DAUBERT MOTION - 1

- the societal value of Olympic Game Farm;

- the relevant animal husbandry standards; and

- underlying facts for which he has no personal knowledge and which are contradicted by evidence in the record.

Federal Rule of Evidence 702 provides that expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). As construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., Rule 702 tasks a district judge with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Scientific evidence is reliable when "the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). When determining the reliability of scientific evidence, the Court can consider a list of non-exclusive factors, such as "whether the theory or technique employed by the expert is generally accepted in the scientific community;" "whether it's been subjected to peer review and publication;" "whether it can be and has been tested;" and "whether the known or potential rate of error is acceptable." *Hardeman v. Monsanto Co*., 997 F.3d 941, 960 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022) (citations omitted). But "[t]he inquiry envisioned by Rule

702 is ... a flexible one," and where an expert offers non-scientific testimony, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind" the testimony. *Porter v. Martinez*, 64 F.4th 1112, 1127 (9th Cir. 2023) (quoting *Daubert*, 509 U.S. at 594, and *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F. 3d 998, 1017 (9th Cir. 2004)). The analysis "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).

> Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology. The court is a gatekeeper, not a fact finder. Accordingly, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury. If the proposed testimony meets the thresholds of relevance and reliability, its proponent is entitled to have the jury decide upon its credibility, rather than the judge. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury. This Court has previously noted that shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (internal quotation marks, citations, and alterations omitted). "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013).

**A. Pervasiveness of USDA citations for violations of the AWA**

Dr. Briggs intends to testify that, based on his experience, training, education, and expertise, he is "unaware of any zoo or animal-holding facility—whether AZA-accredited or not—that has not had at least one or two [AWA] infractions that needed to be resolved." Dkt. # 174 at 22. Dr. Briggs has worked in the zoo industry as a veterinarian, researcher, consultant, and general curator for more than 35 years. His specialized knowledge and experience can serve as the requisite "facts or data"' on which he renders an opinion under Rule 702. *Elosu*, 26 F.4th at 1024. To the extent plaintiff objects to this testimony because Dr. Briggs espoused a different opinion during his deposition and/or because publicly available AWA compliance data shows that he is incorrect, the testimony may be impeached on cross-examination, but it is not inadmissible.

Plaintiff's relevance objection is overruled. While the relevance of the rate of AWA compliance across all regulated facilities is marginal, it is not prejudicial to plaintiff, and it will help establish what "compliance" means in this context. Plaintiff has used and intends to use isolated instances of non-compliance to suggest that Olympic Game Farm is in violation of the Endangered Species Act and/or that its care is egregiously deficient and below reasonable expectations. Defendants will be permitted to rebut that inference through Dr. Briggs's testimony.

**B. Interpretation of Necropsy Tissue Samples**

Dr. Briggs generated a report in response to Dr. Jennifer Ward's opinions regarding the necropsies of the bear Good Mamma and the wolf Brutus. Plaintiff objects to Dr. Briggs's "allegation that . . . the remains and tissue samples Dr. Ward reviewed were too

degraded or decayed to support her opinions." Dkt. # 183. Problems with the quality of the tissue samples is not the thrust of Dr. Briggs's criticism, however. Dr. Briggs notes that the various pathology reports related to Good Mamma and Brutus contain language indicating that the tissue samples had decayed to some extent, preventing the pathologists from determining Good Mamma's cause of death and resulting in competing cause of death determinations for Brutus. Dkt. # 174 at 84-85. Nevertheless, Dr. Briggs generally approves of Dr. Ward's cause of death analyses. *Id.* at 85.

Dr. Briggs's disagreement with Dr. Ward arises from her opinions regarding the animals' quality of life based on the inconclusive post-mortem findings. He again highlights Dr. Ward's own acknowledgement of the difficulties caused by decay and degradation, identifies other potential causes of the observed conditions, and compares Dr. Ward's quality of life claims against his own observations of the animals at Olympic Game Farm, discussions with staff, and a review of medical records. *Id.* at 85-86. There are ample facts and data to support his criticisms of Dr. Ward's quality-of-life opinions, and the Court will not prevent Dr. Briggs from using his knowledge and experience as a basis for weighing the known facts and the identified uncertainties to assist the jury in evaluating those opinions. *See Primiano v. Cook*, 598 F.3d 555, 565–66 (9th Cir. 2010).

**C. Adequacy of Defendants' Animal Care and Veterinarian Expenditures**

Dr. Briggs generated a report in response to the opinions of Lynn Cuny, the president of an animal sanctuary in San Antonio, Texas, regarding the sufficiency of the resources Olympic Game Farm puts toward veterinary and animal care. Dr. Briggs opines,

ORDER REGARDING PLAINTIFF'S DAUBERT
MOTION - 5

based on his visits to Olympic Game Farm, review of medical records, discussions with staff, and a facility-appropriate evaluation of animal needs, that the resources devoted to the animals are adequate.[2] He criticizes Ms. Cuny's single-factor analysis "based solely on comparing the costs of running her facility in Texas with her perceived view of the amounts spent by the Olympic Game Farm on animal care and veterinary care," identifying a number of flaws in the comparison. Dkt. # 174 at 40. Dr. Briggs takes issue with Ms. Cuny's attempt to use a line item in an accounting statement as a proxy for animal care. The jury will have to decide which expert has the better analysis.

**D. Societal Value of Olympic Game Farm**

Dr. Briggs notes that Olympic Game Farm:

> provides an important opportunity for the public to interact with a variety of species. In so doing, these animals leave a life-time impression of the joy, excitement, and appreciation of the magnificence of wildlife from the safety of the patron's automobile. The continued positive evolution and education that Olympic Game Farm provides is a unique opportunity to impact the lives and impressions of the young and old who visit the park.

Dkt. # 174 at 17-18. He later opines that "Olympic Game Farm's remoteness and drive through modality offers families and visitors the ability to interact with wildlife in a setting far different than that in a conventional zoo setting. It is that ability that is one of the calling cards that has allowed Olympic Game Farm to remain open, interesting, and viable to this day. Its uniqueness is in its very essence." *Id.* at 20. Dr. Briggs, with over 35 years' experience in animal handling facilities, is well-placed to opine regarding the uniqueness

---

[2] Plaintiff does not provide a record citation for the opinion it seeks to exclude, and the Court has not found an express statement by Dr. Briggs that "OGF's animal care expenditures are adequate." Dkt. # 183 at 3.

ORDER REGARDING PLAINTIFF'S DAUBERT
MOTION - 6

of the Olympic Game Farm experience and the anticipated benefits of bringing the public into close proximity with wildlife. He may also testify as to his personal observations of the joy and excitement engendered by these encounters at Olympic Game Farm. The only element of this testimony that is objectionable is his assertion that the joy and appreciation for wildlife he perceived will last a life-time or otherwise make a long-standing impression. Dr. Briggs shall refrain from offering testimony that is both outside his area of expertise and not based on his personal knowledge.

### E. Animal Husbandry and Veterinary Care

Plaintiff takes issue with Dr. Briggs's opinions regarding the adequacy of the veterinary care provided to Olympic Game Farm's animals, but does not identify the objectionable opinions. Dkt. # 158 at 6. In his report, Dr. Briggs states that "Olympic Game Farm has a veterinary program that is functional, adhered to, and ensures adequate medical and preventative treatment for animals." Dkt. # 174 at 22. When efforts fall short in some way and "deficiencies or teachable moments" arise, they are "addressed and resolved" in a "pattern of continuous improvement." *Id.* Plaintiff describes this testimony as "opining that all the vet care for OGF animals . . . was appropriate and adequate." Dkt. # 158 at 6. It then attacks the purported opinion as not based on a sound or accepted methodology because Dr. Briggs is "not a fan of anyone taking – making diagnosis without full information and not being there." Dkt. # 158-1 at 19. Plaintiff cites the expert's disagreements with Dr. Lisa Harrenstien regarding the care provided to a lynx with a fractured leg and with Dr. Valerie Johnson regarding the care provided a coyote

ORDER REGARDING PLAINTIFF'S DAUBERT
MOTION - 7

with a leg injury as proof that Dr. Briggs is being inconsistent, refusing to credit their criticisms of the care provided while himself opining that the treating veterinarians "took appropriate steps to treat the lynx's leg fracture and abscess based on the information known at the time" (Dkt. # 158-1 at 20) and treated the coyote "with appropriate pain medications and antibiotics" (Dkt. # 174 at 52). Plaintiff argues that Dr. Briggs's opinions are entirely results oriented, always favoring Olympic Game Farms, and are therefore unreliable.

      Plaintiff's objections rely on misstatements or misreadings of the record and are overruled. Dr. Briggs has not opined that all of the vet care provided by Olympic Game Farm was appropriate and adequate, although he may have concluded that certain types or instances of care meet that standard. His disagreement with plaintiff's experts does not evidence faulty or results-driven methodology. With regards to the care provided to the lynx and coyote, his review of the records, conversations with staff, observation of the animals, education, experience, and/or knowledge led him to the conclusion that the care was appropriate. While he definitely faults Dr. Harrenstien and Dr. Johnson for second-guessing the treating veterinarian's choices based on the benefit of hindsight, he specifically identifies deficits in their analyses. The jury will have to decide which expert has the better understanding of the context in which care was provided and the adequacy of that care.[3]

---

[3] Plaintiff's discussion of the various opinions regarding the bilateral long bone fractures suffered by one or more wolf pups from a 2010 litter similarly and unpersuasively cherry picks statements to support its results-driven argument. The treating veterinarian, Dr. Sarah Owens, diagnosed moderate hyperparathyroidism caused by an

ORDER REGARDING PLAINTIFF'S DAUBERT
MOTION - 8

Plaintiff also seeks to exclude Dr. Briggs's opinions regarding (1) the minimum size for a lion enclosure and (2) the level of discomfort manifested by an animal with a broken tooth, arguing that the expert made contrary statements in the past. The purported contradictions may provide an avenue for impeachment, but they do not make the testimony inadmissible.

### F. Facts for Which the Expert Has No Personal Knowledge and Which are Contradicted by Evidence in the Record

Plaintiff asserts that "[t]he remainder of Dr. Briggs's proffered testimony is unhelpful because he is merely relaying hearsay" that is "often unreliable, contradicted by sworn testimony and hard evidence, or misconstrued." Dkt. # 158 at 8. This argument is abandoned in reply, for good reason. It is well-established that "experts may rely on otherwise inadmissible out-of-court statements as a basis for forming an expert opinion if they are of a kind that experts in the field normally rely upon." *Williams v. Illinois*, 567 U.S. 50, 88 (2012) (J. Breyer, concurring); *see* Fed. R. Ev. 703. "Because of his professional background, knowledge, and experience, we should, in circumstances such as these, leave to the expert the assessment of the reliability of the statements on which he bases his expert opinion. . . . Years of experience teach the expert to separate the wheat

---

abnormal diet. Dkt. # 158-1 at 34-35. While Dr. Briggs doubts that the poor quality radiographs on which this diagnosis was based could support any determination regarding the etiology of the fractures, his main criticism is of Dr. Johnson's subsequent determinations that the cause of the fractures was a meat-only diet, that the bone disease was severe and life-threatening, and that if the pups survived they would suffer severe conformation deficits and crippling lameness. Dkt. # 174 at 90-91. Dr. Briggs notes that all of the wolves from the 2010 litter survived, that he has observed them all on multiple occasions, and that none appears to be abnormal, much less crippled. *Id*. at 91. Again, Dr. Briggs's detailed and thoughtful analysis of the information available to him through the lens of his admitted expertise in the field does not suggest a flawed methodology simply because he generally concludes that the care provided by defendants was adequate and appropriate: it could simply be that that was, in fact, the case.

ORDER REGARDING PLAINTIFF'S DAUBERT
MOTION - 9

from the chaff and to use only those sources and kinds of information which are of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject." *U.S. v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975). A general objection to reliance on out-of-court statements for the development of expert opinions is unavailing.[4]

For all of the foregoing reasons, plaintiff's *Daubert* motion is DENIED except that Dr. Briggs shall refrain from opining regarding the long-term emotional impacts arising from a visit to Olympic Game Farms.

Dated this 8th day of May, 2023.

Robert S. Lasnik
United States District Judge

---

[4] Plaintiff specifically objects to Dr. Briggs's statement that an arctic fox in defendants' care ate the day before he died. Dkt. # 174 at 53. If, as plaintiff seems to suspect, this assertion of fact is untrue and underlies one of Dr. Briggs's opinions, it may make that point on cross-examination.

ORDER REGARDING PLAINTIFF'S DAUBERT MOTION - 10