UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPIC GAME FARM, INC., *et al.*,<br><br>Defendants. | CASE NO. 3:18-cv-06025-RSL<br><br><br>ORDER GRANTING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendants' Second Motion for Summary Judgment." Dkt. # 306. Defendants seek summary determinations that (a) plaintiff lacks standing to pursue its cheatgrass-related claims, (b) the Court does not have jurisdiction over the cheatgrass-related claims because there are no on-going violations, and (c) plaintiff cannot show that the brown bears at Olympic Game Farm ("OGF") are harmed, wounded, or harassed by cheatgrass in violation of the Endangered Species Act ("ESA").

ORDER GRANTING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT - 1

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (the court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**1. Standing**

Article III of the U.S. Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For a case or controversy to exist, the plaintiff

must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). Requiring a "personal stake" ensures "that the named plaintiff was actually injured and is entitled to an adjudication of the claim asserted, not merely abstractly distressed by unfounded fears or a wrong suffered by the public at large." *Waste Action Project v. Draper Valley Holdings LLC*, 49 F. Supp. 3d 799, 802 (W.D. Wash. 2014) (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154, 156 (4th Cir. 2000)). Plaintiff has the burden of establishing that an actual case or controversy exists, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), and must make the required showing "with the manner and degree of evidence required at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to pursue its cheatgrass-related citizens suit under the Endangered Species Act ("ESA"), plaintiff must show, *inter alia*, that one or more of its members has suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

Plaintiff alleges that three of its members' appreciation of and emotional interests in the brown bears at OGF have been impaired because they are unable to visit or view the bears while the animals are at risk of cheatgrass wounds and/or defendants' treatment methods. "An organization can satisfy the concrete harm requirement by alleging 'an injury to the recreational or even the mere esthetic interests' of its members." *Cottonwood Envt'l Law Ctr. V. U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015) (quoting *Jayne*

ORDER GRANTING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT - 3

v. *Sherman*, 706 F.3d 994, 999 (9th Cir. 2013)). "The alleged injury need not be large: an actual and genuine loss, even if a trifle, will suffice for standing purposes." *Draper Valley Holdings*, 49 F. Supp. 3d at 802 (citations omitted). The interruption of the members' recreational and esthetic enjoyment of the OGF brown bears is sufficient to satisfy the "injury in fact" component of Article III standing.[1]

---

[1] This conclusion is somewhat at odds with the Supreme Court's standing analysis in *Clapper*. The plaintiffs in that case feared that a provision of the Foreign Intelligence Surveillance Act ("FISA") would be used to intercept their communications with foreign contacts, and they therefore took costly and burdensome measures to protect the confidentiality of those communications. Similarly, ALDF's members fear that OGF's brown bears will be injured by the cheatgrass in their enclosures and therefore stay away from the bears rather than witness their injury and/or treatment. In *Clapper*, the Supreme Court focused not on what plaintiffs had done to avoid a potential harm, but rather on whether the potential harm itself was "imminent," which it defined as being "*certainly* impending" or a substantial risk. *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565, n.2) (emphasis in original) and 414 n.5 (quoting *Monsanto*, 561 U.S. at 153-54). After finding that interception of plaintiffs' communications, while possible, was not certainly impending, the Court then considered plaintiffs' argument that they had suffered injury-in-fact in the form of the expenses and inconvenience incurred to protect their communications. The Supreme Court concluded that actions taken to avoid a non-imminent harm cannot be used to "manufacture standing:" to hold otherwise would transform the Article III analysis from one requiring a showing of actual or imminent harm to one requiring a fear of harm plus some self-inflicted expense or deprivation. 568 U.S. at 416. Because the harm plaintiffs' sought to avoid was not certainly impending, the injury caused by such avoidance could not, in and of itself, create standing under Article III.

Applying the *Clapper* analysis to this ESA case would result in dismissal of the cheatgrass claim for lack of standing. It is undisputed that OGF has been operating for more than fifty years, and that the only cheatgrass injuries to brown bears occurred in 2019 and involved two brown bears that were sharing the same enclosure. (Plaintiff's assertion that Samantha was injured by cheatgrass a second time in 2020 is not supported by the record.) Defendants thereafter adjusted their cheatgrass management procedures to include removal of a foot of topsoil from and reseeding of the enclosure. Dkt. # 204 at ¶ 68. There is no evidence that any other brown bear suffered cheatgrass-related injuries before or after this episode. While it is possible that a brown bear could be injured as a result of cheatgrass exposure and/or defendants' failure to adequately treat cheatgrass-related injuries, on the record before the Court, no reasonable jury could conclude that the brown bears at OGF face a substantial risk of cheatgrass-related injuries or that such an injury is certainly or clearly impending. Where the risk of future harm is not significant or certainly impending, the fact that ALDF's members have isolated themselves from the bears is insufficient to manufacture a case or controversy.

In 2015, two years after *Clapper* was decided, the Ninth Circuit decided *Cottonwood*, an ESA case in which the claimed injury was impairment of plaintiffs' recreational, esthetic, scientific, and spiritual connection to the forests and animals that might be impacted by defendants' action or inaction. 789 F.3d at 1080-81. The Ninth Circuit found that injury sufficient to establish standing without more. Other post-*Clapper* decisions in the environmental context continue to find that esthetic or recreational injury to the plaintiff is an injury-in-fact without any need to show that environmental harm has occurred or was imminent. *See, e.g., Save Bull Trout v. Williams*, 51 F.4th 1101, 1106 (9th Cir. 2022); Inland Empire Waterkeeper v. Corona Clay Co., 17 F.4th 825, 832 (9th Cir. 2021); *Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 911-12 (9th Cir. 2020). The Court is not free to ignore this precedent. *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (*en banc*) ("[A] published decision of [the Ninth Circuit] constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'") (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)).

ORDER GRANTING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT - 4

Defendants also challenge plaintiff's ability to establish that its members' injury – *i.e.*, their inability to visit and enjoy the brown bears at OGF – is fairly traceable to the presence of cheatgrass and/or would be redressed by a favorable ruling on the cheatgrass claim. Redressability does not pose a problem here: plaintiff seeks to have the brown bears removed from defendants' care, which would then allow its members to visit and enjoy the bears. The "fairly traceable" argument finds some support in *Clapper*, however. In that case, the plaintiffs claimed that the surveillance program to which they objected forced them to take steps to protect the confidentiality of their communications. But the evidence in the record showed that government surveillance had been a problem for plaintiffs before the program at issue was created, so they had a previous "incentive to engage in many of the countermeasures they are now taking," making it "difficult to see how the safeguards [plaintiff] now claims to have implemented" could be traced to the challenged provision. 568 U.S. at 417.

Similarly here, plaintiff filed a lawsuit in 2018 that was based on the premise that its members were unable to observe and enjoy the animals at OGF, including the brown bears, because of other, non-cheatgrass related concerns. More than three years later, plaintiff ascribed the same injury to the presence of cheatgrass in the bear enclosures. Plaintiff's members have testified that there are non-cheatgrass problems at OGF, such as the predator enclosure (Dkt. # 307-1 at 88-90), the size of the bear enclosure (Dkt. # 307-1 at 143-44; Dkt. # 313-1 at 12), and the feeding of bread (Dkt. # 307-1 at 54; Dkt. # 313-1 at 11-12), that keep them from returning to the facility. One could reasonably infer from this

ORDER GRANTING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT - 5

evidence that the members' inability to visit and enjoy the animals at OGF predated their discovery of cheatgrass-related problems and is not fairly traceable to its presence. But there is also evidence that at least one of plaintiff's members has visited select portions of the OGF facility and would, if circumstances change for the brown bears, visit them again. *See* Dkt. # 301 at ¶ 16; Dkt. # 307-1 at 87-88. Thus, whether the injury claimed – the inability to visit and enjoy the brown bears at OGF -- is fairly traceable to the cheatgrass-related issues originally raised in ALDF II is a matter of fact to be determined at trial.

**2. Jurisdiction Over ESA Claim**

"The Endangered Species Act of 1973 . . . contains a variety of protections designed to save from extinction species that the Secretary of the Interior designates as endangered or threatened." *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 690 (1995). *See also* 16 U.S.C. § 1533; *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 159-60 (1978). The ESA makes it unlawful for "any person" to "take" a listed species. 16 U.S.C. § 1538(a)(1)(B). The term "take" is defined in the ESA as "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Plaintiff argues that cheatgrass has killed, wounded, and harmed brown bears at OGF and that defendants harass the bears by housing them in cheatgrass-infested enclosures and by failing to appropriately treat cheatgrass-related injuries. Dkt. # 315 at 13.

The ESA's citizen suit provision authorizes a civil suit to enjoin alleged violations of the ESA. 16 U.S.C. § 540(g)(1). Because only injunctive relief is at issue, plaintiff must

show that the statutory violation is on-going or that there is at least a reasonable likelihood that the violation will continue in the future. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987) (interpreting identical language in the Clean Water Act). *See also Forest Conservation Council v. Rosboro Lumber Co*., 50 F.3d 781, 787 (9th Cir. 1995) (ESA claim of future harm may proceed because plaintiff proffered sufficient evidence to show that defendant's conduct "is reasonably certain to harm the [endangered species] and that such harm is imminent").[2]

Taken in the light most favorable to plaintiff, there is evidence from which a factfinder could conclude that there is a reasonable likelihood that OGF's brown bears will suffer cheatgrass wounds or injuries in the future. It is undisputed that the brown bears are exposed to cheatgrass in their enclosures, that cheatgrass seed pods can work into an animal's skin, that cheatgrass harmed two brown bears in 2019, that older bears, such as those at Olympic Game Farm, are particularly susceptible to cheatgrass injuries, and that defendants have been unable to eliminate cheatgrass from OGF's grounds. While defendants have provided evidence that cheatgrass is not the dire threat to brown bears that plaintiff paints it to be, that their cheatgrass management procedures have been largely successful over a half-century of operations, and that they improved those procedures after the 2019 incident, whether there is a reasonable likelihood of future cheatgrass-related

---

[2] To the extent *Stout v. U.S. Forest Serv*., 869 F. Supp.2d 1271, 1280-81 (D. Or. 2012), held that a plaintiff can seek injunctive relief under the ESA for harms that are wholly in the past, the Court disagrees.

ORDER GRANTING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT - 7

injuries and/or inappropriate treatment of such injuries is an issue of fact to be decided at trial.

### 3. Cheatgrass Claim

Plaintiff argues that cheatgrass and defendants' responses to the injuries caused thereby killed, wounded, and harmed the brown bears Good Mama and Samantha in the past, that future harm to other brown bears is likely because of the continuing presence of cheatgrass at OGF, and that defendants harass their remaining brown bears by housing them in cheatgrass-infested enclosures and by failing to appropriately treat cheatgrass-related injuries, all in violation of the ESA's prohibition on "take." Good Mama and Samantha were undoubtedly harmed (and possibly killed) by cheatgrass in 2019. As discussed above, whether plaintiff can prove that the statutory violation is on-going or that there is a reasonable likelihood that the violation will continue in the future must be determined at trial.

With regards to the harassment claim, "harass" is defined to mean:

> an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering. This definition, when applied to captive wildlife, does not include generally accepted:
>
> (1) Animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act,
>
> (2) Breeding procedures, or

>    (3) Provisions of veterinary care for confining, tranquilizing, or
>    anesthetizing, when such practices, procedures, or provisions are not likely
>    to result in injury to the wildlife.

50 C.F.R. § 17.3. Plaintiff's initial burden is to show that defendants' housing of brown bears in enclosures that contain cheatgrass "creates the likelihood of injury by annoying [them] to such an extent as to significantly disrupt normal behavioral patterns." As described in its opposition to defendants' motion for summary judgment,[3] plaintiff's theory of harassment related to cheatgrass is based on the fact that cheatgrass can injure, harm, or even kill brown bears, as happened to Samantha and Good Mama, and that when such injuries arise, they may interfere with the bear's normal patterns of behavior. But the cited injuries occurred more than four years ago, and to establish harassment now, plaintiff must demonstrate that defendants' failure to eradicate cheatgrass from the brown bear enclosures "annoys" the bears "to such an extent as to significantly disrupt normal behavioral patterns." 50 C.F.R. § 17.3. "Importantly, as a matter of law, harassment does not merely constitute a likelihood of injury—the injury must be caused by an annoyance that is significantly disruptive to normal behavior. *Id*. To read the definition otherwise would render meaningless the word 'annoy.'" *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc*., 397 F. Supp. 3d 768, 777 (D. Md. 2019) (citation omitted). *See also Rowley v. City of New Bedford, Massachusetts*, 413 F. Supp. 3d

---

[3] Plaintiff's reliance on its own motion for summary judgment to support the assertion that "OGF's housing of grizzly bears in cheatgrass-infested pens 'creates the likelihood of injury by annoying [them] to such an extent as to significantly disrupt normal behavior patterns,'" Dkt. # 315 at 17, is inapposite. Neither its motion nor its reply thereto do anything more than state that cheatgrass creates a likelihood of injury to the brown bears. Dkt. # 298 at 20; Dkt. # 314 at 11.

ORDER GRANTING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT - 9

53, 65-66 (D. Mass. 2019) (absent evidence that limited social interactions and/or psychological enrichment had significantly disrupted the elephants' normal behaviors, there was no harassment under the ESA); *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 711 (N.D. Iowa 2016) (because living in relative isolation disrupts a lemur's normal behavioral patterns, the challenged housing arrangement constitutes "harassment" and a "taking" under the ESA). Plaintiff has not identified any evidence from which a reasonable fact finder could conclude that the mere presence of cheatgrass in an enclosure causes disruption to a brown bear's normal behavior patterns. At most, grass and grass awns get on the bears' fur but are removed during their normal grooming behaviors. Plaintiff has not shown any impact on the bears' normal behaviors and has therefore failed to raise a triable issue of fact regarding the first element of its cheatgrass-related harassment claim.

For all of the foregoing reasons, defendants' second motion for summary judgment is GRANTED in part. Plaintiff's claim that housing brown bears with cheatgrass "harasses" the bears and therefore violates the prohibition against "take" is DISMISSED.

Dated this 22nd day of March, 2024.

Robert S. Lasnik
United States District Judge