UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>              Plaintiff,<br>      v.<br><br>OLYMPIC GAME FARM, INC., *et al*.,<br><br>              Defendants. | CASE NO. 3:18-cv-06025-RSL<br><br>ORDER DENYING PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Plaintiff's Second Motion for Summary Judgment." Dkt. # 298. Plaintiff seeks summary determinations that defendants are in violation of the Endangered Species Act ("ESA") because Olympic Game Farm ("OGF") (1) houses its brown bears in cheatgrass-infested enclosures and fails to appropriately respond to cheatgrass injuries and (2) unlawfully possesses a Canada lynx.

ORDER DENYING PLAINTIFF'S SECOND MOTION FOR
SUMMARY JUDGMENT - 1

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (the court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits[1] submitted by the parties, the Court finds as follows:

---

[1] As discussed in the "Order Granting in Part Defendants' Motion to Exclude Expert Testimony," opinions of Dr. Harrenstien that were disclosed after August 9, 2023, may not be considered as part of plaintiff's case-in-chief and will be considered in reply only to the extent that the opinions are truly rebuttal (*i.e.*, they are not necessary to prove

ORDER DENYING PLAINTIFF'S SECOND MOTION FOR
SUMMARY JUDGMENT - 2

**1. Standing**

For the reasons set forth in the Court's "Order Granting in Part Defendants' Second Motion for Summary Judgment," whether plaintiff can establish that its members' injuries are fairly traceable to the presence of cheatgrass is a matter of fact to be determined at trial.

**2. Jurisdiction**

For the reasons set forth in the Court's "Order Granting in Part Defendants' Second Motion for Summary Judgment," whether there is a reasonable likelihood of future cheatgrass-related injuries (and/or inappropriate treatment of such injuries) will have to be determined at trial.

Plaintiff also seeks a summary determination that it satisfied the ESA's 60-day notice requirement, 16 U.S.C. § 1540(g)(2)(A)(i), regarding both the claim arising from the brown bears' exposure to cheatgrass and the claim that OGF is violating the ESA by unlawfully possessing the Canada lynx, Purrsia. The supplemental notice letter sent in March 2022 adequately disclosed plaintiff's cheatgrass-related claims. With regards to Purrsia, the original September 2018 letter stated only that OGF "possesses and displays Canada lynx in conditions that amount to a take under the ESA," Dkt. # 148-9 at 11, and described the offending conditions as "tiny, barren, inadequate enclosures with minimal to no snow cover, frustrating their natural behaviors." Dkt. # 148-9 at 13. The claim plaintiff

---

elements of a claim on which plaintiff bears the burden of proof and they respond to opinions in the August 9th Briggs report).

ORDER DENYING PLAINTIFF'S SECOND MOTION FOR
SUMMARY JUDGMENT - 3

is attempting to pursue at this point in the litigation, however, is based on the assertion that defendants possess Purrsia without a permit from the Washington Department of Fish and Wildlife, a violation of state law which, in turn, violates the ESA.

The Ninth Circuit has identified two purposes for the 60-day notice provision: it gives the government a chance to take responsibility for enforcing the applicable statute, and it gives the alleged violator a chance to bring itself into compliance. *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015). In order to fulfill these purposes, the notice must, "[a]t a minimum ... provide sufficient information ... so that the [notified parties] could identify and attempt to abate the violation." *Sw. Ctr. For Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 522 (9th Cir. 1998). The notice requirement is jurisdictional: failure to comply bars a suit under the ESA. *Cascadia Wildlands v. Scott Timber Co.*, 328 F. Supp. 3d 119, 1127 (D. Or. 2018). Although a notice letter need not list every detail, instance, or aspect of an ESA violation (*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002)), an examination of the notice as a whole (*Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996)) along with the behavior of the recipients in response to the notice (*Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 997 (9th Cir. 2000)) must show that the notice provided enough information that the defendant could "identify and address the alleged violations, considering the defendant's superior access to information about its own activities" (*Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651).

ORDER DENYING PLAINTIFF'S SECOND MOTION FOR
SUMMARY JUDGMENT - 4

The 2018 notice letter failed to serve its essential purposes with regards to the alleged violation of state law. The mere mention of the word "possess" in the context of an ESA claim, without any explanation or supporting facts, would hardly prompt defendants to obtain a permit from the state Department of Fish and Wildlife. Nor would the bare assertion that defendants are in violation of the state ESA provide notice of what defendants were supposed to have done. Because nothing in the September 2018 or March 2022 letters gave defendants an opportunity to identify and address the violation that is now alleged, the Court lacks jurisdiction over the claim that defendants' possession of Purrsia without a permit from a state agency violates the ESA.

**4. Cheatgrass-Related Claims**

The ESA makes it unlawful for "any person" to "take" a listed species. 16 U.S.C. § 1538(a)(1)(B). The term "take" is defined as "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Plaintiff argues that cheatgrass and defendants' responses to the injuries caused thereby have killed, wounded, and harmed the brown bears Good Mama and Samantha in the past, that future harm to other brown bears is likely because of the continuing presence of cheatgrass at OGF, and that defendants harass their remaining brown bears by housing them in cheatgrass-infested enclosures and by failing to appropriately treat cheatgrass-related injuries.

ORDER DENYING PLAINTIFF'S SECOND MOTION FOR
SUMMARY JUDGMENT - 5

Good Mama and Samantha were undoubtedly harmed (and possibly killed) by cheatgrass in 2019. For the reasons stated in the "Order Granting in Part Defendants' Second Motion for Summary Judgment," whether plaintiff can prove that the statutory violation is on-going or that there is a reasonable likelihood that the violation will continue in the future must be determined at trial.

With regards to the harassment claim, plaintiff asserts that confining brown bears to pens containing cheatgrass creates a likelihood of injury that satisfies the regulatory definition of harass. Dkt. # 298 at 20; Dkt. # 314 at 11. But the definition requires more, specifically, "an intentional or negligent act or omission which creates a likelihood of injury to wildlife *by annoying it to such an extent as to significantly disrupt normal behavioral patterns*," such as breeding, feeding, or sheltering. 50 C.F.R. § 17.3 (emphasis added). Simply showing a likelihood of injury is not enough to establish harassment: the potential for injury must arise from annoying acts or omissions that significantly disrupt normal behavioral patterns. *See Rowley v. City of New Bedford, Massachusetts*, 413 F. Supp. 3d 53, 65 (D. Mass. 2019); *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc*., 397 F. Supp. 3d 768, 777 (D. Md. 2019); *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 711 (N.D. Iowa 2016). Plaintiff has not articulated any theory under which the mere presence of cheatgrass, in the absence of any actual harm or injury, annoys the brown bears at OGF or disrupts their normal behaviors, such as

ORDER DENYING PLAINTIFF'S SECOND MOTION FOR
SUMMARY JUDGMENT - 6

breeding, feeding, or sheltering.[2] Plaintiff has not shown that it is entitled to summary judgment on the claim that defendants harass the brown bears by confining them in pens containing cheatgrass.

With regards to the claim that defendants fail to properly treat cheatgrass wounds, no brown bear has suffered or been treated for cheatgrass wounds since Samantha died in 2021. Putting aside the issue of whether there is a reasonable likelihood of future injuries of this type, there are disputed issues of fact regarding the adequacy and appropriateness of the treatment defendants provided to Good Mama and Samantha.

For all of the foregoing reasons, plaintiff's second motion for summary judgment (Dkt. # 298) is DENIED.

Dated this 22nd day of March, 2024.

Robert S. Lasnik
United States District Judge

---

[2] The analysis in the text focuses solely on the cheatgrass claim. As discussed by the District Court in *Hill v. Coggins*, 423 F. Supp.3d 209, 221 (W.D.N.C. 2019), on remand from the Fourth Circuit Court of Appeals, other acts and omissions, such as keeping a wild animal that would normally roam over miles and forage for food in a small enclosure, may significantly disrupt the animal's normal behavior patterns and satisfy the first part of the definition of harass.